THE PEOPLE v. WILLIAM CONSIDINE.

105  149
112  212

*Criminal law—Continuance—Discretion of trial court—Jury—Qualifications—Trial—Receiving stolen property—Evidence—Instructions—Credibility of witnesses—Impeachment.*

1. Where on the trial of a criminal case the respondent is represented by counsel, who insist that the attorney originally employed in the case is better prepared to try it than said counsel, and on the hearing of a motion for a continuance of the case on account of the absence of said attorney it becomes a question as to whether he will postpone said case or another case in which he is at the time engaged, it is not an abuse of discretion on the part of the trial judge to refuse a continuance.

2. Act No. 204, Laws of 1893, which provides for a board of jury commissioners for Wayne county, contemplates that the drawing of jurors shall be public, and that after the names are drawn the minute of the drawing shall be signed by the commissioners and attending officers, and filed in the clerk's office; and the making of an order, after the drawing, that the names of the jurors so drawn shall be suppressed, cannot be commended.

3. The court has power under section 18 of said act, in its discretion and on its own motion, in case there shall not be jurors enough present to form a panel in any case, to direct talesmen to be forthwith drawn from the jury-box, and summoned to attend such court; and the fact that his attention has been called by the prosecuting attorney to such deficiency of jurors, either verbally or otherwise, will not nullify the action so taken.

4. On the day preceding the trial of a criminal case, the court ordered the summoning of additional jurors under said section 18, and, after the drawing, further directed that the names so drawn be withheld from the public and from counsel for both parties. Upon the trial counsel for respondent excepted to the orders so entered, but interposed no challenge to the array, nor was the *voir dire* examination restricted in any way. And it is held that the practice pursued was not so prejudicial to the respondent as to entitle him to a new trial.

5. Under section 5 of said act, which provides that the persons whose names shall be returned by said board of jury commissioners shall have the qualifications of electors in the town or ward in which they reside and for which they are returned by said board, a person so drawn who is an elector, though not a full citizen, is eligible to sit as a juror.

6. It is within the discretion of the court to direct that the jury in a criminal case remain in the custody of an officer during the trial, and to permit a police officer, who is one of the witnesses for the prosecution, to remain in court during the trial of the case; citing *People v. Machen*, 101 Mich. 400.

7. On the trial of a respondent for receiving and aiding in the concealment of stolen goods, a witness who took part in the removal of the goods was called by the people, and after testifying on cross-examination that, at the time of a conversation had by him with the detectives who made the arrest, he did not know whether he would be arrested or not, that no promise had been made him then or since, and that he did not expect any leniency from the prosecuting attorney for his testimony in the case, was asked if he knew that he was criminally liable for what he did on the night the goods were removed. An objection that the question called for immaterial testimony was sustained. The witness further stated that no one had told him that he was liable to arrest for what he did, and that another party, naming him, drove the wagon all the time. And it is held that the testimony so fully covered the question of the witness' knowledge of

the resp·nsibility for his acts that the exclusion of the particular question was immaterial.

8. The testimony of the people tended to show that a bank check was given to the respondent in payment for the goods; that the respondent was arrested directly in front of the store where the goods were sold and the check given; that, upon being arrested, he threw a piece of paper into his mouth, and chewed it beyond recognition. The prosecution were permitted to introduce in evidence a blank check, taken from the check book of the purchaser of the goods, which he testified corresponded to the one he had given in payment for the goods. And it is held that the testimony was admissible to show that the paper upon which the blank check was printed corresponded in color with that which was afterwards found in the form of a wad of paper on the sidewalk near where the respondent stood at the time of his arrest.

9. It was competent for the people to show that, about 10 minutes after the arrest of the respondent, a wad, which looked like paper chewed up, was picked up near the store of the purchaser of the goods, still wet, there being enough from which the jury might infer the connection between this and the check given in payment for the goods, when taken in connection with the statement of the witness that the respondent at the time of his arrest was seen to throw a piece of paper into his mouth.

10. It is within the discretion of the court to permit the prosecuting attorney on the direct examination of a *particeps criminis*, who testifies in behalf of the people, to ask the witness leading questions.

11. The witness, having testified to all the facts and circumstances of which he had knowledge, was asked, on cross-examination, if the respondent, to the knowledge of the witness, at any time knew what was in the trunks in which the stolen goods were placed. And it is held that it was proper for the court to require the witness to first state if he knew whether or not the respondent possessed such knowledge.

12. The witness, having testified that he was under arrest, and was out on bail, was asked on cross-examination if the prosecuting attorney did not prepare his bail bond at the time he was arrested. And it is held that the proposed testimony was properly excluded as immaterial.

13. Testimony on the part of the respondent that the officers acted in conjunction with the party who purchased the goods,

in making the purchase, was immaterial, the offense of which the respondent was convicted having been committed before these means of detection were resorted to.[1]

14. After the people had rested their case, the counsel for the respondent asked that two witnesses, whose names were indorsed on the information, and who were accomplices of the respondent, and informed against for the same offense as that for which he was being tried, be called as witnesses for the people. The court declined to compel the prosecuting attorney to swear the witnesses, but stated that, if the respondent desired to swear them, he would call them. It further appeared that the proposed testimony, if given, would be cumulative. And it is held that it was not the right of the respondent to insist upon the witnesses being called.[2]

15. The fact that the officers were present, attempting to detect the crime of which the respondent was convicted through the intervention of the purchaser of the stolen goods, did not justify any unfavorable inferences by the jury, as they were simply discharging their duty.

16. While the court may properly direct the attention of the jury to the character of the testimony of a *particeps criminis*, the failure to do so is not reversible error where no such instruction is asked, or where the requests preferred, covering the subject, are not proper in form.

17. A witness for the people, who was sworn on the first trial of the case, testified on cross-examination on the second trial that he did not swear on the former trial that, at the time the goods were thrown down at a specified place, respondent was not there, nor that, when the witness came out, after he went into the boathouse to get the goods, the respondent was gone; but that he did testify that one Hahn said to respondent at the boathouse, "Go and watch the horse, and be on the lookout." The official stenographer was sworn as a witness for the respondent, and, after testifying that he had the shorthand minutes of the testimony of the witness taken on the first trial, was asked to read from said minutes the testimony of the witness with reference to what was said

[1] As to the effect of instigation or consent to crime for the purpose of detecting a criminal, as a defense to his prosecution, see note to *Connor v. People* (Colo.), 25 L. R. A. 341.

[2] As to indorsement of names of witnesses on information, see *People v. Machen*, 101 Mich. 401, and note; *People v. Kindra*, 102 Id. 147; *People v. DeFrance*, 104 Id. 563; and as to the duty of prosecuting attorney to produce the testimony of *res gestae* witnesses, see *People v. Germaine*, 101 Mich. 488, and note.

and done at said boathouse at the time the witness swore the respondent and Hahn were there. An objection that no foundation had been laid for the impeachment of the witness was sustained, and a request on the part of respondent's counsel for leave to recall the witness to lay a foundation for such impeachment was refused.

Mr. Justice MONTGOMERY filed an opinion, concurred in by McGRATH, C. J., favoring a reversal, and holding that the attention of the witness appeared to have been called to his former testimony, and the proper foundation laid; that the objection was general that no foundation had been laid for the impeachment of the witness; that no criticism was made as to the form of the question, and that the objection should not have prevailed.

Mr. Justice LONG filed an opinion, concurred in by GRANT, J., favoring an affirmance, and holding:

*a*—That the foundation for the impeaching testimony was sufficient, and that the court was not in error in not permitting the witness to be recalled to lay a further foundation for its introduction.

*b*—That the impeaching question was not in proper form; that, in impeaching a witness in this manner, the same language, in substance, must be repeated to the impeaching witness as was asked of the witness whom it is sought to impeach.

*c*—That the testimony offered was in writing, taken down by the official stenographer; that it was therefore within the power of the counsel for respondent to have incorporated it in his bill of exceptions, and thus show to the Court whether in fact the statements were conflicting; and that for this reason also the exception should be held not well taken.

Mr. Justice HOOKER filed an opinion holding that the judgment should not be reversed for the refusal of the court to permit the reading of the stenographer's minutes taken on the former trial; that such minutes were not a part of the record, nor depositions or private writings of the witness sought to be impeached, nor writings signed by him, which may be rea_ without the usual foundation being laid; that they stand on no better footing than any other writing made by the impeaching witness, and, while it might be admissible for the stenographer to read them by way of impeachment, the necessity for a proper foundation was not dispensed with, nor could anything be read that was not plainly contradictory of the testimony of the witness in relation to the matters inquired of in the preliminary questions.

Error to recorder's court of Detroit. (Chapin, J.) Argued October 26, 1894. Decided April 30, 1895.

Respondent was convicted of receiving and aiding in the concealment of stolen goods, knowing them to have been stolen, and was sentenced to imprisonment in the State prison at Jackson for 5 years. Judgment affirmed. The facts are stated in the several opinions.

*Edwin Henderson* and *Alfred J. Murphy (James H. Pound,* of counsel), for respondent.

*Allan H. Frazer,* Prosecuting Attorney, and *Ormond F. Hunt,* Assistant Prosecuting Attorney, for the people.

MONTGOMERY, J. Respondent was convicted of receiving and aiding in the concealment of 80 bolts of cloth, knowing the same to have been stolen from one Joseph W. Esser. The evidence tended to show that respondent went with one Wirth and one Hahn to the boathouse of one Duff Fecteau, at Grosse Pointe, on the 8th or 9th of December, 1893, and that the stolen goods were there obtained, taken into a one-horse wagon, and removed to Wirth's place, on Atwater street; that subsequently the goods were taken to the tailor shop of one Hoetger, and there sold, and that a check was given to respondent by Hoetger in payment for the goods; that respondent was arrested directly in front of Hoetger's store, and that he immediately threw a piece of paper into his mouth, which he refused to give up until it was so chewed that it could not be identified. Respondent admitted that he was present on the occasion, but his testimony differs from other witnesses in some details as to what was said and done, and he claims to have been acting without any knowledge that the goods were stolen, and without any connection with the transactions relating to their concealment or sale.

Complaint is made that the trial judge refused to grant a continuance of the case to enable respondent to obtain

counsel. We have examined the record with care, and are satisfied that there was no such abuse of discretion on the part of the trial judge as would justify us in reversing the case upon this ground. Respondent was represented on the trial by two counsel, and while his counsel insisted that the attorney originally employed in the case, Col. Atkinson, would have been better prepared to try it, the record affords indication that it became a question as to whether Col. Atkinson would postpone the present case or another case in which he was at the time engaged. Some discretion must be allowed a trial judge in arranging and disposing of cases, if courts are to be run with any regard whatever for economy, and we are not prepared to say that there was any abuse of such discretion in the present case.

On the day preceding the trial, the circuit judge made an order for the summoning of 30 extra jurors, under the provisions of Act No. 204, Laws of 1893. The jurors were publicly drawn. After the drawing, an order was made that the names of the jurors so drawn should not be given to the public or to the counsel for the prosecution or defense. On the morning of the trial, Judge Gartner, who had assisted in a former trial of the case, appeared, and noted an exception to the entry of the order for drawing the extra jurors and the order suppressing the names of the jurors. Following upon this the following proceedings took place:

"*Judge Gartner:* I now ask, if your honor please, to see the original *venire* in order to ascertain as to the regular drawing of this jury.

"*The Court:* You may see it."

The *venire* was produced, and handed by the clerk to Judge Gartner.

"*Mr. Frazer:* Counsel has asked for the minutes of this drawing, to see whether the matter was regular. He brings it here, and immediately dictates to Tom Navin's brother the names of the jurymen. I ask that he be ordered to surrender it to the clerk.

"*The Court:* I understand your purpose in receiving—

"*Judge Gartner:* I desire to ascertain as to whether these names have been returned by the jury commission or not, and I have a right to do that.

"*The Court:* There is no question about that. You may read that over.

"*Mr. Hunt:* Do I understand that he is to have time, not only to read over these names, but to go down to the jury commission, and come back here, and make an investigation at this time?

"*The Court*: No, sir; we are to proceed to impanel a jury this morning. You may proceed now."

Counsel for respondent insisted that they had a right to ascertain "whether these names are the names in the jury-box or not," and asked that the clerk furnish a list of the names, to which the court replied that counsel would have to be satisfied with the return, counsel stating:

"It is customary, as I understand, at the beginning of the trial, for a list of the jurors, their names and residences, to be furnished to attorneys. Now, this list that was drawn yesterday, of course we don't know anything about it. The list was not furnished.

"*The Court:* It was your business to be present, and ascertain who was drawn.

"*Judge Gartner:* We don't know anything about it.

"*The Court:* You have known it.

"*Judge Gartner:* I don't know what time it was, as far as that is concerned, if your honor please. It strikes me that I ought to have had some kind of notice, and I desire further at this time to enter an exception to the drawing of this jury at this time, without having given counsel for the respondent notice of the drawing of this jury."

These proceedings were followed by an application for a continuance, which was denied, and the impaneling of the jury proceeded, the clerk proceeding to call first from the regular panel of jurymen, and, after that panel was exhausted, calling jurymen from among the names drawn from the box on the previous day.

The statute contemplates that the drawing of jurors shall be public, and that after the names are drawn the

minute of the drawing shall be signed by the commissioners and attending officers, and filed in the clerk's office, when it is made the duty of the clerk to make out a *venire facias* directed to the sheriff, commanding him to summon the persons named to appear and act as jurors.[1] The practice pursued in this case of suppressing the names of jurors cannot be commended. It seems to have been adopted in the fear that, if the knowledge of the names of the jurors were furnished, there would be opportunity for tampering with the jury. But, in our view, the trial judge was too apprehensive. We need not determine whether respondent's counsel have pursued the correct practice, or whether the error is such as to call for a reversal of the case, as we are of the opinion that the judgment should be reversed on other grounds, but the question is of too much importance to pass unnoticed. A person accused of crime is entitled to a fair opportunity to ascertain the antecedents and predilections of those to whom his fate is to be committed, and this right may be as important to him as the right to be confronted with the witnesses against him.

The claim is made that there was no written application for the order directing the drawing of additional jurors, but we think this was unnecessary. It is made the duty of the judge, by the statute in question, to order additional jurors when enough are not present, and this he can do on his own motion. The fact that his attention has been called to it by the prosecuting attorney, either verbally or otherwise, would certainly not nullify his action.

Exception was taken to permitting one Charles Kulling to act as a juror, for the reason that he was not a citizen. This question is ruled by *People v. Scott,* 56 Mich. 154; *People v. Rosevear,* 56 Id. 158. See, also, Act No. 204, Laws of 1893, § 5, which provides that jurors

---

[1] Act No. 204, Laws of 1893, § 12.

"shall have the qualifications of electors in the town or ward in which they reside and for which they are returned by said board." The juror in question was an elector, though not a full citizen.

Exception was taken to the court directing the jury to remain in the custody of the officer during the trial, and to the ruling of the court permitting one of the witnesses of the prosecution to remain in court during the trial. Both rulings were clearly within the discretion of the court. As to the latter, see *People v. Machen*, 101 Mich. 400.

On the trial a witness who took part in the removal of the goods to Hoetger's place was called, and upon cross-examination he was asked:

"Do you know that you are liable for what you did that night,—criminally liable?"

This was objected to as immaterial, and the objection was sustained. While this question might properly have been allowed to be answered, we think it cannot be said that the respondent was prejudiced, in view of all the testimony of the witness. He had already testified, on cross-examination, that, at the time of the conversation with the detectives, he did not know whether he would be arrested or not; that no promise had been made him then or since; that he did not expect any leniency from the prosecuting attorney for his testimony in the case; and further stated, after the objection above quoted: "No one has told me that I am liable to arrest for what I did. Blay drove the wagon all the time." This testimony so fully covered the question of the witness' knowledge of the responsibility for his acts that the exclusion of the particular question quoted is immaterial.

As before stated, the testimony of the people tended to show that respondent, on the occasion of the arrest, threw a piece of paper into his mouth, and chewed it beyond recognition. The prosecution were permitted

to introduce a blank check, taken from Hoetger's check book, and which he had testified corresponded to the one which he had given to Considine. This was objected to. We think the testimony was admissible to show that the paper corresponded in color with that which was afterwards found in the form of a wad of paper on the sidewalk near where Considine stood.

On the cross-examination of Hoetger, the witness testified that Fecteau spoke to him about buying the goods, and he was asked:

"Did he know the detectives had been there to see you, from what he said?"

This was excluded by the court, with the remark:

"This man cannot swear as to whether or not Mr. Fecteau knew such and such to be the case."

Whether this ruling was strictly correct or not is immaterial, as it appears that Hoetger subsequently had an interview in the presence of Fecteau with the detectives, before the goods were brought to the store, which was the only purpose with reference to which the testimony sought was competent.

The sixteenth assignment of error relates to the ruling of the court permitting the prosecutor to ask a leading question of a *particeps criminis* of the respondent. The question put was:

"Didn't you say, at the last trial, that he stood at the head of the horse?"

The witness started to answer this question. "I said he stood about 10 feet," when he was interrupted by the objection. The question was not further answered, but was followed by the question:

"After Hahn told him to go down and watch the horse and be on the lookout, where did Considine go?

"*A.* He stood—I told you before—about five or ten feet in front of the horse."

We think it was within the discretion of the court to allow the question to be put in this form.

On the cross-examination of this witness he was asked:

"Did Considine at any time know what was in those trunks, to your knowledge?"

This was objected to, and the court stated:

"You can ask this witness if he knows whether or not Mr. Considine knew."

Counsel should have adopted the question suggested by the court. He had testified to all the facts and circumstances, and the negative statement that he did not know that Considine had any knowledge of the contents of the trunks would not have strengthened the respondent's position, unless he had some knowledge upon the subject other than that derived from his connection with the transaction. Whether he had this knowledge it was very proper that the court should require the respondent to ascertain by a preliminary question in the form suggested. Indeed, a negative answer to this question would have removed any possibility of the jury drawing the inference that the witness did know that Considine had guilty knowledge, and had withheld the fact from them.

While this witness was on the stand he testified that he was under arrest in the cause, and was out on bail. He was asked on cross-examination if the prosecuting attorney did not prepare his bail bond at the time he was arrested. This was excluded as immaterial, and we think rightly. The fact sought to be elicited could not have affected the witness' standing.

Testimony offered by the people that, about 10 minutes after the arrest, a wad, which looked like paper chewed up, was picked up near the place of Hoetger, still wet, was competent. There was enough from which the jury might have inferred the connection between this

and the check which was given to Considine, when taken in connection with the statement of the witness that Considine was seen to place a paper in his mouth.

The twenty-second assignment of error is based upon the refusal of the court to permit the defendant's counsel, upon cross-examination of one of the people's witnesses, to call out a purely hearsay statement, and has no merit.

Error is assigned upon the refusal of the question put to one of the officers, who was asked:

"You went up there to get Hoetger to buy these goods?"

It was excluded. The subsequent testimony of the same witness sufficiently shows that the officers did act in conjunction with Hoetger, and counsel rely upon *Saunders v. People*, 38 Mich. 218, as authority to show that this was important. But this respondent is not charged with having sold these goods, but with having received them and concealed them. If the purchaser were on trial, the fact that the officers had connived to induce him to make the purchase might bear upon the question of whether the offense was committed, but the offense, if any was committed, was committed before these means of detection were resorted to.

One of the officers was asked the question, "Don't you know who stole those goods?" This was excluded, as the evidence was that the officer did not know of his own knowledge, and the question called for hearsay. It was incompetent.

Error is assigned upon the refusal of the court to compel the prosecutor to call and examine two witnesses, Jesse Trumbull and August Hahn, who are shown by the testimony to be accomplices of respondent, and against whom informations had been filed on the same charge. The testimony of the witnesses would also have been cumulative, and it is not the right of the respondent to insist upon their being called.

Error is assigned upon the refusal of the court to give certain instructions. The eleventh asks, in substance, an instruction that, if the officers of the law were cognizant of the fact that a crime was about to be committed, it was their duty to prevent the commission of the crime, and if they "connived at, assisted, and had knowledge that the crime was to be committed, in the manner and form charged in the information, and the officers were present at the place for the purpose of making complaint against defendant and others, and using the evidence thus acquired for the purpose of the prosecution of the defendant and others, that evidence is open to unfavorable inferences, and the jury should examine such testimony with closest scrutiny." The request contained a correct statement of the law, but it has no application to the case in hand. As before stated, it was not the attempted sale of the goods to Hoetger which constituted the offense with which respondent was charged, but the previous acts of concealment; and the fact that the officers were present, attempting to detect this crime through the intervention of Hoetger, did not justify any unfavorable inferences by the jury. They were simply discharging their duty.

The thirteenth and fourteenth, we think, are sufficiently covered by the general instructions.

The fifteenth and sixteenth are not insisted upon.

The nineteenth request is not covered by the general charge. This request reads as follows:

"Under the testimony of Kennedy, of Schroeder, of Blay, and of Wirth, each is guilty of the charge contained in the information. Each testified that he had guilty knowledge. They are, under the law, *participes criminis*, and their testimony implicating defendant must be by the jury regarded with extreme suspicion."

This instruction was not given, nor was the subject adverted to, except as appears by the two following extracts from the charge:

"The question for you to decide is whether or not the defendant is guilty as charged in the information, and it is immaterial whether other parties have or have not been arrested, and you are not to take that fact into consideration in arriving at your verdict."

And further:

"You have heard all the testimony in the case, and have seen all the witnesses. You may give the testimony of the different witnesses such weight and credence as you think it is entitled to, and if, after a careful consideration of all the evidence, you are satisfied beyond a reasonable doubt," etc.

We are not prepared to say that the instructions requested should have been given in the precise form in which they were preferred. The rule is well settled that the credibility of an accomplice, like that of any other witness, is exclusively a question for the jury, and that the jury may convict upon the testimony of an accomplice alone. But it has also been frequently stated that it is in many cases important that the court should comment upon the nature of such testimony, and point out the grounds of suspicion which may attach to it, calling the attention of the jury to the situation and the temptation under which such witnesses may be placed, and especially if there is testimony tending to show that they have been induced to take the stand in a particular case under a promise of immunity. See *People v. Hare*, 57 Mich. 505; *People v. Jenness*, 5 Id. 305; *People v. Schweitzer*, 23 Id. 301. It would certainly in this case have been proper for the court to direct the attention of the jury to the subject-matter covered in the request, but whether a failure to do so would be sufficient ground for reversing the case we need not determine.

On the cross-examination of one August Wirth, a witness for the people, he gave testimony as follows:

"I was sworn on the former trial of this case. I did not swear on the former trial of this case that, at the time those goods were thrown down out there in Grosse

Pointe, Considine was not there. I did not swear in that case that, when I came out, after I went in to get the goods, Considine was gone. On the former trial I swore that Hahn said to Considine at the boathouse, 'Go and watch the horse, and be on the lookout.'"

The stenographer of the court was called by respondent's counsel, and, after stating that he heard Wirth testify on the former trial, and had the shorthand minutes of that testimony taken by him, was asked to read the testimony of the witness Wirth with reference to what was said and done at the boathouse at Grosse Pointe at the time he swore he (the defendant, Considine) and Gus Hahn were there. An objection was made to this, on the ground that no foundation had been laid for the impeachment of the witness Wirth. Respondent's counsel stated that he wished to impeach the testimony of the witness Wirth given on this trial by the testimony of the same witness given on the former trial. The objection was, however, sustained. The respondent's counsel then asked leave to recall the witness to lay a foundation, which request was refused. We think the first question put should have been allowed. The attention of the witness appears to have been called to his former testimony, and the proper foundation laid. The objection was general that no foundation had been laid for the impeachment of the witness Wirth. No criticism was made as to the form of the question, and this objection, we think, should not have prevailed.

Numerous other errors are assigned, but we think none of the questions presented would be likely to arise upon a new trial of the case.

The judgment should be reversed, and a new trial ordered.

McGrath, C. J., concurred with Montgomery, J.

Long, J. I am unable to agree with my Brother Montgomery upon the reversal of this case.

While it is true that a person accused of crime

is entitled to a fair opportunity to ascertain the antecedents of those to whom his fate is to be committed, we think the practice pursued here was not so prejudicial to the respondent as to entitle him to a new trial. The statute contemplates that, when there are not enough jurors present to form a panel, the court may at once direct talesmen to be drawn and summoned. Had the order in this case been made, even on the morning of the day of the trial, it would have been equally valid, and no greater opportunity would have been furnished either counsel to investigate as to the qualifications of the jurors. It does not appear that ample opportunity was not afforded the parties by examination on the *voir dire* to do so. Nor was there any challenge to the array.

2. The requests to charge should not have been given in the form in which they were preferred. While it would have been proper for the court to direct the attention of the jury to the subject-matter covered in the requests, yet the failure to do so, when the requests were not proper in form to be given, cannot be held to be reversible error. It is well settled that the credibility of an accomplice, like that of any other witness, is exclusively a question for the jury, and that the jury may convict upon the testimony of an accomplice alone. While it has many times been held that it is in many cases important that the court should comment upon the nature of such testimony, and point out the grounds of suspicion which may attach to it, yet, where the court is not asked specifically to call the attention of the jury to such grounds of suspicion, I know of no case where a failure to do so has been held error. In the present case certain requests were asked, but, inasmuch as such requests were not preferred in proper form, I do not think the refusal to give them was error, or the failure of the court to call attention to the testimony of accomplices such error as calls for reversal.

3. The reason for the reversal of the case is placed by my Brother MONTGOMERY upon the questions arising under the cross-examination and attempted impeachment

of the witness Wirth, who was called by the people. The record shows that upon cross-examination Wirth testified as follows:

"I was sworn on the former trial of this case. I did not swear on the former trial of this case that, at the time those goods were thrown down out there in Grosse Pointe, Considine was not there. I did not swear in that case that, when I came out, after I went in to get the goods, Considine was gone."

I think the foundation for the impeaching testimony was sufficient, and that the court was not in error in not permitting the witness to be recalled to lay further foundation for its introduction. The trouble with the respondent's position is that his impeaching question was not in proper form. The testimony given on the former trial might or might not tend to impeach the witness. If it would not, then it was incompetent. In impeaching a witness in this manner, the same language, in substance, must be repeated to the impeaching witness as was asked of the witness whom it is sought to impeach. This is the only fair and competent method of impeachment, by showing contradictory statements. *Rice v. Rice*, 104 Mich. 371; *De Armond v. Neasmith*, 32 Id. 231. The reasons for the rule are there stated. In *De Armond v. Neasmith, supra,* it is said:

"When an attempt is made to impeach a witness, there should be no reasonable doubt but that the questions asked the impeaching witness and the witness sought to be impeached are one and the same."

The same rule was laid down in *Rice v. Rice*, and it was said:

"The language which it is claimed the witness used must be given, and he asked if he used it."

In the present case the only offer made was to read from the testimony given by Wirth on the former hearing. The judge may have given a wrong reason for a correct ruling, or the prosecuting attorney may have given a

wrong reason for objecting; but if the question was not proper, under the well-settled rule, which counsel are presumed to know, I see no reason why, under the circumstances of this case, courts of appeal should hold that there was error for which a new trial should be awarded.

I think this point should be held bad for another reason. The testimony offered was in writing, taken down by the official stenographer. It was therefore within the power of the counsel for respondent to have incorporated it in his bill of exceptions, and thus show to this Court whether in fact the statements were conflicting. If they were not, then no error was committed in excluding it. Had the attempted impeachment consisted of a letter written by the witness, which the court rejected, clearly the letter should have been incorporated in the record, in order that the Court might determine whether it was material. I see no reason why the same rule should not apply to the written testimony of a witness. I think it a wholesome rule that, whenever written evidence is excluded, it should be put in the record, so that the Court may determine its competency, and not reverse a case where no injustice may have been done.

The judgment must be affirmed.

GRANT, J., concurred with LONG, J.

HOOKER, J. I agree with my Brother LONG that this cause should not be reversed for the refusal of the court to permit the reading of the stenographer's minutes taken upon the former trial. Under repeated decisions, such minutes were not a part of the record. *Edwards v. Heuer*, 46 Mich. 95; *People v. Sligh*, 48 Id. 54. Neither were they depositions or private writings of the witness sought to be impeached, nor writings signed by him, which may be read without the usual foundation being laid. See *Lightfoot v. People*, 16 Mich. 507. They stand, then, on no better footing than any other writing made by the impeaching witness. Such writings may always be used by the witness to refresh his recollection, but for

no other purpose. The Court has so far enlarged this
rule (if it be an enlargement) as to permit a lawyer who
took minutes at the trial, which he testifies to be accur-
ate, to read the same by way of impeachment, instead of
restricting the testimony to oral statements from recol-
lection, after reading the minutes. See *Fisher v. Kyle,*
27 Mich. 454; *Spalding v. Lowe,* 56 Id. 366, 370; *Halsey v.
Sinsebaugh,* 15 N. Y. 486. But in such a case the neces-
sity for a proper foundation is not dispensed with, nor is
it to be understood that the rule permits the impeach-
ing witness to read anything that is not plainly and spe-
cifically contradictory of the witness to be impeached,
in relation to the preliminary questions constituting the
ground for impeachment. In this case the witness Wirth
testified on cross-examination as follows:

"I was sworn on the former trial of this case. I did
not swear on the former trial of this case that, at the
time those goods were thrown down out there in Grosse
Pointe, Considine was not there. I did not swear in that
case that, when I came out, after I went in to get the
goods, Considine was gone. On the former trial I swore
that Hahn said to Considine at the boathouse, 'Go and
watch the horse, and be on the lookout.' "

The impeaching question asked the stenographer,
after he had testified that he heard Wirth testify on the
former trial, and had the shorthand minutes of that tes-
timony taken by him, was:

"Will you read from the minutes of his testimony on
that trial his testimony with reference to what was said
and done at the boathouse at Grosse Pointe at the time
he swore he (the defendant, Considine) and Gus Hahn
were there?"

What the minutes would show does not appear.
Apparently the witness was asked to read all that Wirth
testified about what was said and done at the boathouse,
not only by Wirth, but by others present. This testi-
mony would have been hearsay, and inadmissible,
except so far as it rested on the previous question to

Wirth. It was therefore proper to exclude the testimony under the question asked. *De Armond v. Neasmith*, 32 Mich. 231; 1 Greenl. Ev. § 462, and note.

I think the judgment should be affirmed.