## PEOPLE v. MULVANEY.

1. CRIMINAL LAW — CROSS-EXAMINATION— EVIDENCE — RELATIONS
   OF PARTIES.

   In a prosecution for assault with intent to do great bodily
   harm, after respondent's counsel had offered in evidence the
   examination of complaining witness, taken in justice's court,
   and containing evidence of prior trespasses committed by
   cattle of respondent and resulting ill-feeling between the
   parties concerned, the court did not commit error in permit-
   ting the prosecution to examine the witness at some length
   upon the same point brought out in the preliminary examina-
   tion.

2. SAME—PRIVILEGED COMMUNICATIONS.

   Respondent's act in going before a justice of the peace, after
   assaulting and injuring complaining witness, and offering
   to plead guilty to a charge of assault and battery, was not
   privileged: the court rightly refused to strike out the testi-
   mony.

3. SAME—WITNESSES—PREJUDICE.

   It was within the discretion of the trial court to permit the
   prosecution to cross-examine a female witness, offered by re-
   spondent, as to their relations, to show that they lived to-
   gether and were intimate, it appearing that the witness par-
   ticipated with the respondent in the assault.

4. SAME—APPEAL AND ERROR.

   Testimony which was struck out on objection by respondent's
   attorney, no exception being taken to the conduct of the
   prosecutor in asking the questions, could not be relied upon
   as error.   Exceptions are necessary to review errors.

5. SAME—ARGUMENT.

   Alleged prejudicial argument of the prosecutor will not war-
   rant a reversal, unless the attention of the court is called to
   the matter, a ruling made and exception taken.

6. SAME — ASSAULT WITH INTENT TO DO GREAT BODILY HARM —
   TRIAL—ASSAULT AND BATTERY.

   Whether the crime committed by respondent was assault with
   intent to do greatly bodily harm or assault and battery was a
   proper question for the jury, under the evidence.

7. SAME—CHARGE TO JURY—INTENT.
    The refusal of a requested instruction that the jury must find an intent to do a serious injury of an aggravated nature, was not cause for reversal when it was covered by the charge as a whole, and the jury fully informed as to the law.

8. SAME.
    *Held,* that the verdict was not against the weight of the evidence.

Exceptions before sentence from Eaton; Smith, J. Submitted June 13, 1912.  ( Docket No. 132.)  Decided July 11, 1912.

Maynard Mulvaney was convicted of assault with intent to do great bodily harm less than the crime of murder.   Affirmed.

*Russel R. McPeek,* Prosecuting Attorney, for the people.

*G. D. Blasier* and *Horace S. Maynard,* for respondent.

MCALVAY, J.  Respondent in this case was convicted of an assault with intent to do great bodily harm less than the crime of murder.  He was the owner of three horses, which, running at large on the morning of the day of the affray, entered upon the premises of Henry Bigley, a neighboring farmer in the township of Bellevue, Eaton county, damaging his crops, on account of which he impounded them in his barn, and caused notice thereof to be served at respondent's house by a deputy sheriff.  Out of these circumstances this case arose.

Upon return of respondent to his home that evening, he was informed by Bessie Smith, a young woman who lived alone with him as his housekeeper, of these facts, and they proceeded together to the house of Bigley for the purpose of recovering the horses.  Respondent found his horses locked in Bigley's barn, and then went to the house

171 MICH.—18.

where Mrs. Bigley and her daughter were, rapped upon the door, and stood in the doorway, the young woman with him standing on the ground with a lantern in her hand. He demanded the horses, and was told by Mrs. Bigley that he could not have them until he settled for the damage done by them; that Bigley was at Cronk's. He said he would have the horses if he had to get them at the point of his gun. He swore at her, and drew his revolver. Mrs. Bigley rang the farm bell to call her husband. This was between 9 and 10 o'clock at night. Bigley had gone to the barn of a neighbor named Cronk to stable his horses, for the reason that his barn was too small for his own and respondent's horses. Returning from Cronk's in the dark, hurrying because his wife had rung the bell, he was confronted by respondent, who jumped out, crying out at him and rushing towards him. Respondent was accompanied by the young woman. Bigley started backward for some distance, and the young woman said, "Don't let him back clear to Cronk's." Whereupon respondent jumped forward, seized him by the throat, and threw him upon the ground, demanding his horses, and began kicking and choking him, and came down upon him with his knee in his side. Respondent got up, drew his gun, and said:

"I am going to have those horses tonight if I have to use this revolver."

He swore at him while he was holding him down, and after he drew his revolver, the young woman, whom Bigley claims was also armed with a revolver, said to respondent:

"Do not kill the s—— o—— b——, just fix him so he can't crawl."

Bigley's wife, who from the house heard voices down the road, went down and met them in the road after the affray, and heard respondent calling Bigley names, and saying he could hardly keep his hands off him. Bigley claims to have been roughly handled and severely injured,

his throat was bleeding, and his side was injured where respondent jumped on him with his knee.

After this occurrence respondent secreted himself in the attic when the officers went to make the arrest, and on the next day went to two justices of the peace in that vicinity, and desired to plead guilty to an assault and battery, which he said to one of them he had committed on Bigley. The justices refused to accept such a plea. Upon the trial respondent and the young woman denied that they were armed, but admitted an assault and battery of a mild sort upon Bigley. Respondent testified that the young woman said: "Do not let him get away. He is going back clear to Cronk's." He denied that he was armed, stating that he left his revolver in the house when he came home before going to Bigley's, but admitted that he frequently carried it. The uncontradicted evidence in the case is that it was his habit to have a revolver with him. The jury upon the evidence submitted in the case found respondent guilty as charged. The case is brought to this court upon exceptions before sentence.

Numerous errors are assigned. The first to be considered are those claimed to have been committed by the court in allowing testimony on the part of the people relative to former trespasses of respondent's stock upon the Bigley farm, which occurred in the testimony of complaining witness Bigley. Two such questions were asked on his direct examination, both of which were objected to on the part of respondent and the objections were sustained. It appears that upon cross-examination of this witness, evidently for the purpose of showing ill feeling between these parties, the matter of former trespasses was gone into at length by respondent's counsel, who also introduced in evidence the examination of complaining witness in justice's court, which contained considerable testimony upon the question. Later, upon redirect examination upon this matter by the prosecutor, objection was made, and the court stated that, because the matter had been gone into by the defense, the answer was allowed to stand, and

some further testimony was admitted. Evidently the defense considered the introduction of this testimony material for some reason, and therefore cannot complain because of the ruling of the court in allowing the prosecution to examine the witness upon such matter.

Counsel for respondent claim that the court was in error in permitting testimony to be admitted on the part of the people relative to the conduct of respondent in going before justices of the peace, desiring to plead guilty to the charge of assault and battery, apparently upon the ground that what he said and did was *quasi* privileged. The two justices of the peace testified as to these facts. The evidence was offered to show the conduct of respondent after the offense was committed, of a like character of testimony showing his hiding in the attic, and for that purpose it was material. These were the voluntary acts of respondent, without restraint, threats, or inducement held out to him, as appears by the examination of one of the justices of the peace by the court. There was no error in admitting it or refusing to strike it out.

Several errors are assigned upon the action of the court in allowing certain cross-examination of respondent and the young woman, Bessie Smith, his housekeeper, upon matters relating to their conduct and relations, it being claimed on the part of respondent that such examination, particularly that of the young woman, was irrelevant and prejudicial. The prosecution claims that this was proper cross-examination, as bearing upon the credibility of the witness, her reliability and good faith, and within the reasonable discretion of the court. For this purpose, and when properly controlled, such examination is not improper. In the instant case we do not find any abuse by the court of this discretion. These parties had lived alone together for some time. They both participated in this affray. Their relations were a proper subject of inquiry. Underhill on Criminal Evidence (2d Ed.), § 221; Tiffany's Criminal Law, pp. 621, 622; *People* v. *Hare*, 57 Mich. 505 (24 N. W. 843); *People* v. *Harrison*, 93 Mich. 594

(53 N. W. 724). When a question was asked which the witness refused to answer, before objection was made on the part of respondent, the court ruled she need not answer it, and it was not answered. It is claimed that the exception taken was to the language used by the court. The exception will not warrant such a claim, and the language of the court was not objectionable.

In the cross-examination of Bessie Smith relative to whether or not respondent usually carried a revolver, the following occurred, upon which error is assigned:

"*Q.* Did you hear of his holding up that young fellow down the road one night?

"*A.* I never heard anything about it.

"*Q.* You didn't know anything about it?

"*A.* No, sir."

Respondent's counsel objected and asked to strike it out. The court granted the motion and no exception was taken. This assignment of error upon this matter was without merit.

Errors are assigned relative to certain cross-examination of each of seven witnesses produced on the part of respondent. As the record does not show any exceptions taken upon which to base these assignments of error, they will not be considered.

It is claimed that the argument of counsel to the jury was prejudicial, and its allowance was erroneous. This court has held repeatedly that such objections will not be considered, unless the attention of the court is called to the matter and a ruling had, and exception taken to such ruling. As this practice was not followed, such errors assigned will receive no consideration.

It is claimed that the court erred in refusing to charge the jury that respondent could not be convicted of the crime charged in the information, and, under the proofs, could be convicted of no greater offense than assault and battery. The court properly refused these requests for the reason that upon the entire record these were questions of fact to be determined by the jury.

As to the remaining requests to charge refused, or given in a modified form, the principal objection is that the court refused to give in the language of the request a definition of the intent in the offense charged necessary to be found by the jury to warrant a conviction. The court charged the jury: "It must be an intent to do a serious injury of an aggravated nature." *People* v. *Troy*, 96 Mich. 530 (56 N. W. 102), approved in *People* v. *Ochotski*, 115 Mich. 601 (73 N. W. 889). There was no error in refusing to give the requests. We have examined the charge as given by the court, and, taken as a whole, it correctly stated the law, and cannot be said to have been misleading.

A motion for a new trial was made, based upon several grounds, most of which have been disposed of in considering the foregoing assignments of error. The main ground of this motion was that the verdict was contrary to the weight of the evidence. This contention we do not find to be supported by the evidence in the case. It was a case to be determined upon the disputed facts submitted to the jury, and there was evidence in the case to support the verdict the jury rendered. The motion was therefore properly denied.

We find no reversible error in this case. The conviction is affirmed, and the case will be remanded to the circuit court, which is directed to proceed to judgment.

MOORE, C. J., and STEERE, BROOKE, STONE, and BIRD, JJ., concurred. BLAIR and OSTRANDER, JJ., did not sit.