---

PEOPLE v. ALLEN.

CRIMINAL LAW—OTHER OFFENSES—EVIDENCE—PREJUDICE.
Conduct of prosecuting attorney in prosecution for robbery armed in getting before the jury, to the intended prejudice of defendant, evidence of other offenses inadmissible by previous and proper ruling of the court, constituted reversible error as a defendant has a right to a trial in accordance with the rules of evidence, unhampered by a circumvention thereof which is so successful as to be beyond elimination by instructions to jury.

BOYLES and BUTZEL, JJ., dissenting.

Appeal from Macomb; Spier (James E.), J. Submitted June 12, 1941. (Docket No. 73, Calendar No. 41,510.) Decided October 6, 1941.

Dale Allen was convicted of robbery armed. Reversed and new trial granted.

*Alean B. Clutts,* for appellant.

*Herbert J. Rushton,* Attorney General, and *Wilbur F. Held,* Assistant Prosecuting Attorney, for the people.

BOYLES, J. (*dissenting*). Defendant appeals from a conviction and sentence for robbery armed. On Sunday, January 29, 1939, about 10 o'clock at night, the beer store of one Frank Smith, in Macomb county, was held up by one Charles Fritsch, Jr., who robbed the bartender at the point of a gun of a small sum of money. Fritsch later confessed and was convicted, and his brother-in-law, Charles Burleigh, was later tried for participation in the crime, convicted and sentenced. Subsequently, the defendant herein was arrested, informed against and put on trial for having participated in the crime as an accomplice, resulting in conviction by jury and sentence to State prison for a term of not less than 15 nor more than 40 years. Several errors are claimed by defendant for reversal which will be considered in order.

1. On the night of the robbery, Fritsch, Charles Burleigh and the defendant were together in the beer place where the robbery occurred until about 11:30 or 11:45. Shortly after 12 o'clock, the three of them were seen together again in and about another beer place some distance from the scene of the robbery. Several witnesses testified to the presence of the three in and about this second place shortly after 12 o'clock the same night. The prosecuting attorney attempted to show a breaking and entering of this place at that time by Fritsch, with Burleigh and the defendant as participants or accomplices, claiming this was admissible on the theory of intent, or a scheme, plan or system of successive

crimes, by virtue of 3 Comp. Laws 1929, § 17320 (Stat. Ann. § 28.1050). Before any testimony was taken as to what occurred at the second beer place, the question of admissibility was argued before the court by counsel in the jury's absence. The substance of this conference and the court's ruling appears in the record. The court held:

"The fact there was some other offense being committed would not be competent evidence but the fact they were seen together would be competent evidence. * * *

"*Mr. Held* (Prosecuting Attorney): We are not attempting to prove the other crime but I don't think we should be barred from showing where he was that night. They have established an alibi here and we have a perfect right to go into that.

"*The Court:* You can show where any of these parties were that night without showing commission of some other offense."

The bartender at the second beer place was then sworn for the people. He testified, without objection, that Charles Burleigh and the defendant came into his place that night a little after 12 o'clock, then further testified:

"*Q.* Now, you say you know Charles Fritsch?
"*A.* Yes.
"*Q.* Now, did you see him that night?
"*A.* I saw him about five minutes afterward. We discovered him in the back room.
"*Q.* He was in the back room?
"*A.* Yes.
"*Q.* You know how he happened to be in the back room?
"*A.* He broke in.
"*Q.* He broke in? Was Charles Fritsch placed under arrest in your place of business that night?
"*A.* Yes.

"*Q.* Will you describe to the jury just exactly how that back end is?

"*A.* It is an empty room."

Counsel for defendant then objected on the ground that this type of evidence was not admissible for the purpose of showing intent, or second and separate distinct crimes, and asked that this testimony be stricken out. The ruling of the court was:

"*The Court:* I have ruled with you. It comes under that statute and should be excluded. So far. I think the testimony is competent and may stand. I think the particular question is immaterial, the description of that particular building. I think we are getting over into the other side of the fence.

"*Mr. Held:* I understand the court checked over the testimony given at the previous Burleigh trial and after it was checked over I had the court's approval on it and that is the question I am asking now.

"*The Court:* I would say this particular question is not material here.

"*Mr. Held:* If the court please, I believe I have the consent of the court to ask the questions and answers that are here. It is going to dwell on the same thing I have asked which the court says I can't ask.

"*The Court:* Detailed description of the property?

"*Mr. Held:* No, it had reference to the back end, though.

"*The Court:* I think we have gone about as far as we dare go on that, that particular phase.

"*Q.* All right, I will ask this question. In all fairness to the jury and everyone else, before you answer it, if there is any objection, Mr. Demoplos, make it and the court can rule at that time. I will ask you whether or not Charles Fritsch was arrested that night while in the act of breaking and entering the rear end of your place of business?

"*A.* Yes, sir.

"*Mr. Demoplos:* I still say—I didn't have the opportunity to object. The witness is very anxious to answer, guess he doesn't understand the English language. All this is objectionable and we have so many cases and I think the prosecutor is endeavoring to insert something there that the jury shouldn't speculate on or pass and at this time I ask that the witness be excused.

"*The Court:* Well, the last answer may be stricken and the jury disregard it.

"*Mr. Held:* That is the exact question and exact answer that was given at the Burleigh trial.

"*The Court:* I am ruling it should be excluded and the jury disregard any reference to any subsequent offense. * * *

"*The Court:* The ruling is, there can be no testimony here as to any subsequent offense either on the part of Fritsch or Allen other than the one we are trying."

In the absence of the jury, the court told counsel that he would have to instruct the jury to disregard any question of any breaking and entering of the second place. The court then directed the jury (upon its return to the courtroom) as follows:

"*The Court:* I might make the record clear now to the jury that the last question and answer was stricken. There is a question and answer prior to that about some other breaking and entering in this Bright Spot, this last place, by Mr. Fritsch. Any reference to any breaking and entering there will be stricken and disregarded by the jury. We are interested only in the particular offense charged in the examination, the beer store, robbery armed and not any other subsequent breaking and entering, and the jury should not gather any inference involving any of the men mentioned, and particularly this defendant, as being involved in any other offense at all. That is not before the jury. It would be error on your part to infer anything of that nature."

In submitting the case to the jury at the conclusion of the proofs and argument, the court charged the jury:

"Bear in mind the portions of testimony or argument that the court has stricken from the record and told you to disregard. You must disregard all of that which you were instructed at the time to disregard."

The persistence of the prosecuting attorney in continuing to offer objectionable testimony after the adverse ruling of the court was obviously intended to influence the jury. It should have been met with a prompt rebuke from the court, and borders on ground for a mistrial had such a motion been made. Were it not for the fact that the record as a whole establishes the guilt of the defendant beyond a reasonable doubt, we would be inclined to grant a new trial because of this flagrant misconduct of the prosecutor. However, defendant's rights were protected by the court. Testimony that Fritsch, Burleigh and the defendant were together in and near the second place shortly after midnight was admissible and no error was committed in receiving that testimony. The attempt of the prosecuting attorney to prove a subsequent crime does not require a reversal, the court having promptly ruled that it would not be competent and the jury having been cautioned to disregard it. *People* v. *Page,* 198 Mich. 524.

2. Counsel for defendant, in a motion for new trial, for the first time complained that the name of Charles Burleigh was not indorsed on the information, that the State failed to produce him as a witness and, therefore, ground for a new trial. Burleigh was an accomplice in the offense for which defendant was on trial, and had been convicted and

sentenced therefor. At no time during trial did counsel for defendant suggest or request that Burleigh's name be indorsed or that he be called by the people as a witness, although Burleigh's participation in the crime was well known. Failure of the prosecution to indorse Burleigh's name on the information or call him as a witness is not ground for reversal.

"Error is claimed because the name of Oscar L. Green was not indorsed on the indictment as a *res gestae* witness. *Hurd* v. *People*, 25 Mich. 405, 415; *People* v. *Grant*, 111 Mich. 346. When one is charged with aiding and abetting a criminal, it lies within the sound discretion of the prosecution to refuse to indorse the name of the criminal as a witness. *People* v. *Raider*, 256 Mich. 131, 136; *People* v. *McCullough*, 81 Mich. 25, 34. Green had not been sentenced at the time of the trial, but by his plea of guilt he acknowledged the criminality of his act. The advisability of calling Green as a witness rested with the prosecution. It may become advisable, on the one hand, in the absence of other evidence, to rely upon testimony of a principal to show that the party charged with aiding and abetting him had guilty knowledge of the criminal act. On the other hand, the testimony of a self-avowed criminal might be so wholly untrustworthy as to make it inadvisable to call him to the witness stand. At any rate, the prosecution in the instant case acted within its 'sound discretion' in refusing to indorse Green's name as a witness." *People* v. *Kennan*, 275 Mich. 452, 455, 456.

In *People* v. *Baker*, 112 Mich. 211, it was developed at the trial that Adam Baker and John Smith were with the defendant and participated in the alleged crime of breaking and entering. Counsel for defendant then moved the court for an order requiring the prosecuting attorney to indorse their

names on the information and call them as witnesses. Mr. Justice MOORE, writing for the court, said:

"The court refused to make this order, and his refusal is said to be error. It was the claim of the respondent that he was not guilty. The request for the order was based wholly upon the statement of the prosecuting attorney. If that statement was true, not only was the respondent guilty of the offense charged, but Adam Baker and John Smith were alike guilty. We know of no rule of law that requires the prosecution to call as a people's witness a *particeps criminis. People* v. *McCullough,* 81 Mich. 25, 34; *People* v. *Considine,* 105 Mich. 149; *People* v. *Resh,* 107 Mich. 251."

3. After verdict, the circuit judge, without comment, sentenced defendant for a term of not less than 15 nor more than 40 years in State prison. This is within the limits provided by law for the offense. Subsequently, in denying defendant's motion for a new trial, the court commented upon the reasons which impelled the court to impose an apparently severe sentence. Defendant now complains that the sentencing judge was in error in reaching some of the conclusions thus announced. On appeal from conviction and sentence in a criminal case, we do not examine the record to determine whether a sentence is excessive, if it is within the powers conferred upon the sentencing court.

"Where a sentence is within the statutory limits, it is not reviewable on the ground of being excessive. The statutes give wide discretionary powers to trial courts upon the supposition that they will be judicially exercised in view of all the facts and circumstances appearing at the trial. The Supreme Court, however, has no supervisory control over the punishment that shall be inflicted in a given case." 1 Gillespie's Michigan Criminal Law & Procedure, § 604.

See, also, *Cummins* v. *People,* 42 Mich. 142; *People* v. *Kelly,* 99 Mich. 82.

Even a sentence which exceeds that authorized by law is not ground for a new trial or for the release of the prisoner. 3 Comp. Laws 1929, § 17352 (Stat. Ann. § 28.1094).

4. Defendant claims that because the court announced that in his sentence he had given consideration to the previous record of the defendant, including several arrests and a previous conviction for felony, the sentence was really for a second felony although not charged as such. Counsel relies for reversal on *People* v. *Ancksornby,* 231 Mich. 271. The case is not in point. In the *Ancksornby Case,* the sentence imposed by the circuit judge was greater than that prescribed for a first conviction for the offense charged. Defendant was not charged with a second or subsequent offense and the sentence imposed was held to be void as to the excess only. The case was remanded for proper sentence as for a first offense.

We have examined the other errors complained of, and the claimed grounds for new trial, and find they do not constitute ground for reversal. From an examination of the entire record, it does not appear that the alleged errors resulted in a miscarriage of justice. 3 Comp. Laws 1929, § 17354 (Stat. Ann. § 28.1096).

Conviction should be affirmed.

BUTZEL, J., concurred with BOYLES, J.

WIEST, J. The conduct of the prosecuting attorney was contumacious and a studied method of getting before the jury, to the intended prejudice of defendant, evidence inadmissible by previous and proper ruling of the court. Such misconduct by the

prosecutor falls squarely within the holdings which commanded reversals in *People* v. *Cords,* 232 Mich. 620, and *People* v. *Cowles,* 246 Mich. 429. The viciousness of the prosecutor went beyond the evil appearing in the *Cords Case,* for here he got the excluded evidence before the jury while in that case the error was in offers of proof.

In the *Cords Case* this court said:

"The defendant had a right to a trial in accordance with the rules of evidence, unhampered by a circumvention thereof under statements of improper offers, followed by endeavors to get the excluded matters before the jury, and successful to a point beyond possible elimination by instructions to the jury. We think the virus of such prejudicial matter inoculated and the prejudice thereof ran its course regardless of remedies applied."

The court did all possible to remedy the error but the harm intended by the prosecutor had been accomplished.

The conviction is reversed and a new trial granted.

Sharpe, C. J., and Bushnell, Chandler, North, and Starr, JJ., concurred with Wiest, J.