PEOPLE v. DOZIER

1. WITNESSES—CREDIBILITY—IMPEACHMENT—LAYING FOUNDATION.
   A proper foundation must be laid to impeach a witness's credibility for inconsistencies between that witness's prior statements and his trial testimony.

2. WITNESSES—CREDIBILITY—IMPEACHMENT—LAYING FOUNDATION.
   A proper foundation is laid to impeach a witness's credibility when the cross-examiner asks him whether he made a certain prior statement, giving the substance of the state-

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 58 Am Jur, Witnesses §§ 674, 767, 776.
[3] 53 Am Jur, Trial § 670.
[4, 5] 21 Am Jur 2d, Criminal Law § 368.

ment and naming the time, place, and person to whom it was made to refresh the witness's memory, and if the witness denies making such a statement or fails to admit it by not remembering, the cross-examiner may thereupon proceed to prove that the witness made such a statement.

3. WITNESSES—CREDIBILITY—IMPEACHMENT—INSTRUCTIONS TO JURY.

Failure to give an instruction that the testimony of one witness used to impeach the credibilty of another witness could be considered only for impeachment purposes and not as substantive evidence of defendant's guilt is not reversible error where there is sufficient evidence, other than the prior inconsistent statements of the impeached witness, to establish defendant's guilt.

4. CRIMINAL LAW—LINEUP—DUE PROCESS.

A lineup in which defendant participated was not so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law where the record did not show any disparity in appearance that would have singled the defendant out from other lineup participants, the complainant gave a detailed description of her assailant soon after she was raped, picked out defendant's photograph before the lineup was held, identified defendant in the lineup as her assailant, and the attorney who represented defendant at the lineup testified that he thought the lineup was conducted fairly.

5. CRIMINAL LAW—LINEUP—ADMISSIBILITY.

No reversible error was committed where the court told the jury that it had found in a separate evidentiary hearing that a lineup from which defendant was identified had been properly conducted since that finding ultimately had determined that testimony regarding the lineup identification was admissible.

Appeal from Recorder's Court of Detroit, Elvin L. Davenport, J. Submitted Division 1 March 5, 1970, at Detroit. (Docket No. 6,597.) Decided March 24, 1970. Leave to appeal denied September 1, 1970. 383 Mich 826.

Jimmie Dozier was convicted of rape and unarmed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Owen J. Galligan,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow* and *Carl Levin* (Defenders' Office—Legal Aid and Defender Association of Detroit), for defendant on appeal.

Before: LESINSKI, C. J., and QUINN and V. J. BRENNAN, JJ.

V. J. BRENNAN, J. Around 9:45 a.m., February 4, 1968, a Detroit woman, the complainant here, was raped and robbed by a young man meeting defendant Jimmie Dozier's description. Charged with the two crimes,* defendant claimed mistaken identity and alibi as defenses. A jury returned a verdict of guilty of both charges on August 26, 1968, and the court sentenced defendant to two concurrent prison terms of 10 to 15 years.

Defendant's first two allegations of error involve a telephone conversation allegedly held between the defendant's mother and a policewoman assigned to the case. Defendant testified on cross-examination that he arrived home from an all-night restaurant around 6 o'clock in the morning of February 4 and stayed in bed until 6 o'clock that evening. Asked by the prosecutor whether she had told a policewoman over the telephone that defendant had arrived home between 1 and 2 a.m., defendant's mother, a defense witness, answered "No, I didn't, I don't think I did," and finally, "I don't remember." The prosecutor then called the policewoman to the

---

* MCLA § 750.520 (Stat Ann 1954 Rev § 28.788) (rape); MCLA § 750.530 (Stat Ann 1954 Rev § 28.798) (unarmed robbery).

stand who testified from her notes that defendant's mother had indeed told her that defendant had arrived home between 1 and 2 a.m. The policewoman added that defendant's mother also told her that on February 4 her son stayed in bed until 6 p.m.

Defendant contends that the prosecutor failed to lay a foundation for the impeachment of his mother's credibility, and therefore the policewoman's testimony was inadmissible. *Queen Caroline's Case* (1820), 2 Brod & Bing 284, 313 (129 Eng Rep 976); 3 Wharton, Criminal Evidence (12th Ed) § 918. We disagree. The prosecutor questioned defendant's mother as follows:

"*Q.* (*By Mr. Abate, continuing*) Did you receive a telephone call anytime within a few days after February 4th, 1968, from a person purporting to be a policewoman?

"*A.* I can't recall.

"*Q.* Can't recall? Did you ever speak with anybody from the police department?

"*A.* One Saturday I did.

                    *      *      *

"*Q.* Mrs. Dozier, did you make a statement to anyone that you remember, that your son, Jimmie, came home at one or two a.m. Sunday morning, February 4th, 1968?

"*A.* No, I didn't.

"*Q.* You did not make that statement to anyone? Are you sure? Are you sure, Mrs. Dozier?

"*A.* I don't think I did. I can't remember."

McCormick summarizes the elements of laying a foundation:

"To satisfy the requirement the cross-examiner will ask the witness whether he made the alleged statement, giving its substance, and naming the time, the place and the person to whom made. The pur-

pose of this particularity is, of course, to refresh the memory of the witness as to the supposed statement by reminding him of the accompanying circumstances.

"If the witness denies the making of the statement, or fails to admit it, but says 'I don't know' or 'I don't remember' then the requirement of 'laying the foundation' is satisfied and the cross-examiner, at his next stage of giving evidence, may prove the making of the alleged statement." McCormick, Handbook of the Law of Evidence (1954), § 37, p 68.

The prosecutor's preliminary questions were more than adequate to refresh the mother's memory.

The trial court did not instruct the jury that the policewoman's testimony could be considered only for purposes of impeachment, and not as substantive evidence of the defendant's guilt. Defendant contends that the failure to give an instruction to this effect is reversible error. The record shows that trial counsel neither requested the instruction nor objected to the court's failure to give it. Consequently, defendant cannot complain of error. GCR 1963, 516.2; *People v. Mallory* (1966), 2 Mich App 359; *People v. Allar* (1969), 19 Mich App 675. We note that it has been held to be reversible error not to give an instruction even though an instruction was not requested and objection was not made. *People v. Durkee* (1963), 369 Mich 618; *People v. Eagger* (1966), 4 Mich App 449; *People v. Rodgers* (1969), 18 Mich App 37; *People v. Anderson* (1966), 2 Mich App 718. However, where it has, the prior, inconsistent statements have been the only direct evidence of guilt, the other evidence being either nonexistent, *Anderson, supra,* or only circumstantial, *Durkee, Eagger, Rodgers, supra.* In the instant case, the complainant's testimony provided strong and direct

evidence of guilt; the prior, inconsistent statements did not. We find no reversible error.

Defendant's remaining two assignments of error involve a lineup at which the complainant identified him as her assailant.

Defendant contends that the lineup "was so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law." *Stovall* v. *Denno* (1967), 388 US 293 (87 S Ct 1967; 18 L Ed 2d 1199). Again we disagree. In the first place, the record does not reveal a disparity in appearance that would have the effect of singling the defendant out from the other members of the lineup. Although no one member of the lineup was identical in his appearance to the defendant, one was very close, and all were of the same race. In the second place, misidentification seems unlikely, at least on the present record. The complainant gave the police a detailed description of her assailant soon after she was raped, picked out defendant's photograph before the lineup was held, and then positively identified defendant at the lineup only two days later, on February 6. The attorney who represented defendant at the lineup testified at trial that he thought the lineup was conducted fairly and that the complainant was unequivocal in pointing out the defendant as her assailant.

Finally, defendant contends the court erred by telling the jury three times that it held the lineup to have been "properly conducted," without once telling them that they were free to disregard the lineup identification if they thought the complainant was mistaken.

We find no error in what the court did tell the jury. The admissibility of testimony concerning the lineup identification was disputed in their presence. The court dismissed them and conducted an evidentiary

hearing to determine the validity of the lineup and, ultimately, the admissibility of the testimony concerning it. There was no harm in telling the jury the result of the dispute, that is, that the court found the lineup to have been properly conducted.

Nor do we find error in what the court did not tell them. Trial counsel neither requested a further instruction nor objected to the instruction given. GCR 1963, 516.2. At the same time, trial counsel did argue that little weight was to be given to the testimony concerning the lineup, calling the lineup a "phony showup." Defendant was not prejudiced.

Affirmed.

All concurred.