# PEOPLE v FORD

## OPINION OF THE COURT

1. WITNESSES—CRIMINAL LAW—CORROBORATING WITNESSES—PROSECU-
   TOR'S ARGUMENT.

   The prosecutor is entitled to comment upon a defendant's failure
   to produce corroborating witnesses.

2. ROBBERY—PROSECUTOR'S ARGUMENT—EVIDENCE—RULES OF EVI-
   DENCE—OBJECTIONS—INSTRUCTIONS TO JURY.

   A prosecutor's statements during his closing argument that he
   had the money defendant had allegedly taken in an armed
   robbery and pictures taken at the scene but because of the
   rules of evidence he could not show them to the jury were not
   prejudicial to defendant where defense counsel immediately
   objected, the court instructed the jury that it was to draw its
   own conclusions from the evidence and disregard the prosecu-
   tor's statements, and the jury had previously been informed
   that the money taken was found near defendant and that a
   police officer took pictures of the scene.

3. WITNESSES—CRIMINAL LAW—EVIDENCE—MIRANDA RIGHTS—VOLUN-
   TARY STATEMENTS—IMPEACHMENT—CREDIBILITY.

   Otherwise voluntary statements may be introduced to impeach a

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 186, 187.
   Presumption or inference from party's failure to produce witnesses
      within his control, as affected by his introduction of some evi-
      dence on the matter in question. 125 ALR 1375.
[2] 75 Am Jur 2d, Trial §§ 306, 315, 317.
[3, 4] 21 Am Jur 2d, Criminal Law §§ 358, 368.
   58 Am Jur, Witnesses §§ 56, 675.
   Disclosure by witness of fact or transaction as waiver of his privi-
      lege against self-incrimination in respect of details and particu-
      lars which will elucidate it. 147 ALR 255.
[5] 21 Am Jur 2d, Criminal Law §§ 503–506.
   29 Am Jur 2d, Evidence § 528.
   Propriety, and prejudicial effect of showing, in criminal case, with-
      drawn guilty plea. 86 ALR2d 326.
[6] 30 Am Jur 2d, Evidence § 1082.
[7] 5 Am Jur 2d, Appeal and Error § 776 et seq.

defendant's credibility, even though such statements were taken in violation of a defendant's Miranda rights.

4. Witnesses—Criminal Law—Impeachment—Voluntary Inconsistent Statements—Prosecutors—Proper Foundation.

A prosecutor may utilize voluntary inconsistent statements to impeach a defendant's testimony once a proper foundation for impeachment has been laid.

5. Criminal Law—Evidence—Plea Negotiation—Negotiations with Sheriffs.

Evidence of a previously withdrawn plea may not be introduced or commented upon by the prosecutor, but there is no impropriety in introducing evidence of a defendant's negotiations with a sheriff regarding settlement of the charge.

Concurrence by O'Hara, J.

6. Criminal Law—Jury—Credibility—Prerogatives of Jury.

*It is the sole prerogative of the jury as to which party it chooses to believe where completely different versions of an event are testified to in a criminal case.*

7. Criminal Law—Statutes—Appeal and Error—Miscarriage of Justice.

*It is to be presumed that the statute which provides that no judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice means what it says (MCLA 769.26).*

Appeal from Macomb, Frank E. Jeannette, J. Submitted Division 2 January 14, 1975, at Grand Rapids. (Docket No. 18043.) Decided February 24, 1975.

James L. Ford, Jr., was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A.*

*Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Thaddeus F. Hamera,* Chief Appellate Lawyer, and *Stephen F. Osinski,* Assistant Prosecuting Attorney, for the people.

*Wayne C. Shehan,* for defendant on appeal.

Before: ALLEN, P. J., and N. J. KAUFMAN and O'HARA,* JJ.

ALLEN, P. J. On June 22, 1973, a jury found defendant guilty of armed robbery, MCLA 750.529; MSA 28.797. On July 6, 1973, defendant received a sentence of 7 to 15 years in prison with 184 days credit for time served.

Defendant raises three allegations of error on appeal. First, defendant argues that the prosecutor's question as to whether defendant was going to subpoena a witness to testify in defendant's behalf was analogous to the prohibition against commenting upon defendant's exercise of his right to remain silent, and was improper and prejudicial. Second, defendant argues that reversible error was committed when the prosecutor, in the course of his argument, referred to some evidence which had not been admitted during trial. Finally, it is urged that reversible error occurred when the prosecutor questioned defendant about a prior inconsistent statement which had previously been excluded by the trial court.

This case arises out of an armed robbery which occurred at the Admiral Motel, located on South Gratiot just north of 15 Mile Road in Clinton Township, on January 5, 1973. The manager of the motel testified that at about 9 p.m., defendant came into the motel and asked for a room, and the

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

manager quoted him some prices. Defendant then pulled out a gun, and engaged the manager in a typical "your money or your life" conversation. Defendant then reached over the front counter, pulled out the cash drawer and grabbed what later turned out to be $104 in bills of various denominations. As defendant turned from the counter, the manager shot him, and defendant fell to the floor. Defendant's version of what occurred on that night differed from the above, and various aspects of defendant's testimony will be discussed as they are relevant to the issues.

Defendant testified that on the night in question he was on his way to a party, and stopped at the motel to secure a room which he and a female companion were to share later that evening. He testified that he had hitchhiked to the motel because a friend of his, who was having the party with another person, was using defendant's automobile. Defendant said that after talking with the motel manager, he reached down for some money which he kept in his sock, and heard the manager tell defendant to get out of the motel because he did not like defendant's "kind in here". Defendant became angry, and said that he told the manager that he would "blow the place up". As he turned to leave, he was shot in the shoulder, and fell to the floor. He denied taking any money from the cash drawer, and denied that he was involved in any sort of armed robbery at the motel on the night in question. He acknowledged that he had a starter pistol in his possession, and stated that it belonged to another person from whom he had obtained it about one hour earlier in a nearby saloon. He said that he wanted the pistol to protect himself because the party was being held in an area frequented by "shady people".

While defendant testified, he produced no witnesses in his behalf. Neither the person from whom he obtained the starter pistol, nor his proposed female companion and the person allegedly using his automobile, were called to testify in his behalf. The prosecutor asked defendant: "Are you going to subpoena anybody to come in and testify for you?" Defense counsel objected, and the trial court instructed the jury to disregard that statement. Later, at the beginning of his general jury instructions, the trial judge told the jury not to be concerned with whether or not defendant produced any witnesses.

The above facts are relevant to defendant's initial argument, and we find that claim to be without merit. The prosecutor is entitled to comment upon defendant's failure to produce corroborating witnesses, and the trial court afforded more protection to defendant than he was entitled to receive. *People v Gant,* 48 Mich App 5, 8–9; 209 NW2d 874 (1973). See also *People v Hooper,* 50 Mich App 186, 196–197; 212 NW2d 786 (1973), *lv den,* 391 Mich 808 (1974).

Testimony was received from both the manager of the motel and from the police officers who arrived on the scene that the money allegedly taken from the cash drawer was lying on the floor near defendant's body, particularly near his feet. While one officer testified that he collected the money, put it in his pocket and returned to the station to count it, the money was never offered into evidence. The officer said that he had placed it in an envelope and subsequently put it into a safe. The envelope was then taken to a state police crime laboratory and tested for fingerprints, and was returned in another envelope. The officer's first envelope was not returned to him, and he was

unable to say that the dollar bills returned to him were exactly the same dollar bills which he delivered to the crime lab. Defense counsel objected to any reference to the fingerprint smudges allegedly found on the dollar bills. Also, another officer testified that he took some pictures of the scene and these photographs were never offered into evidence. During his rebuttal argument, the prosecutor told the jury: "Unfortunately, or fortunately, fortunately for our system we have rules of evidence", and then said: "I have still got the money. I still have got the pictures. But I still cannot bring them before you." Defense counsel immediately objected, and the trial judge instructed the jury to disregard the prosecutor's statement. Relying upon *People v John Martin,* 37 Mich App 621; 194 NW2d 909 (1972), *remanded on other grounds,* 387 Mich 766 (1972), among other authorities, defendant argues that reversible error occurred in light of the above facts.

In *Martin,* defendant was charged with one specific instance of sale of heroin. MCLA 335.152; MSA 18.1122. During his closing argument, the prosecutor referred to defendant as a pusher and said that "many people" go to such a person. Although there was no evidence that defendant sold heroin to other people, the court held that in view of the entire summation and the cautionary jury instruction, no reversible error was present. *Martin* said that if any prejudice occurred, that prejudice had been cured by the trial judge's instruction to the jury that it had a duty to make findings of fact and draw inferences from the testimony rather than from what the attorneys argued. 37 Mich App 621, 632.

In the instant case, the trial court told the jury that it was to draw its own conclusions from the

evidence and specifically cautioned the jury to disregard the prosecutor's statement at issue. Defense counsel promptly objected to the statement, and the jury had previously been informed that the money taken from the cash drawer was found strewn about near defendant's body. Also, testimony was received that a police officer took pictures of the scene. We find that the prosecutor's statement was not so prejudicial that the curative instruction failed to have any effect on the jury. In this situation, we find no prejudice to defendant and therefore an absence of reversible error. *People v Wheat,* 55 Mich App 559, 566; 223 NW2d 73, 76–77 (1974).

Relying upon *People v Allen,* 299 Mich 242; 300 NW 59 (1941), defense counsel argues that reversible error was committed when the prosecutor asked defendant whether defendant had ever made a different statement other than that which he had made to the jury. During trial, the jury was excused and the prosecutor made an offer of proof, placing Detective Russell Day on the witness stand. Day testified that on June 11, 1973, he was visiting another prisoner in the jail, when defendant called out to the officer and said: "Can I cop a plea to attempted armed robbery? After all, I didn't get out of the building with the money, that's an attempt, that's not armed robbery." The officer said that he told defendant to wait and talk to his attorney about this matter. The officer said that he neither solicited, encouraged nor pursued this conversation. The prosecutor moved to allow the introduction of this evidence in his case in chief, defense counsel objected, and testimony was taken from defendant, on a special record, the jury still being absent, which indicated that defendant had just seen his attorney and said: "They are

trying to give me a 15-year cop". Defendant denied making the specific statements to which Officer Day had previously testified. The trial court said that while defendant had volunteered the statement, the evidence would be excluded on the grounds that because defendant was represented by counsel, he had no right to engage in plea bargaining by himself, and that to admit the evidence would force defendant to take the stand and deny the substance of Officer Day's testimony. Therefore, the judge said that the evidence was inadmissible "at this stage of the proceedings", and precluded the prosecutor from introducing it.

Defendant testified in his own behalf, and on cross-examination the prosecutor inquired "and you've never made a different statement other than this that you're giving us today?" Defense counsel immediately objected, and the trial court sustained that objection. The prosecutor once again asked whether defendant's trial testimony was the first time he had related his version of what happened the night in question. Defense counsel objected, and the jury was excused. The prosecutor argued that he wanted to introduce defendant's previous statement to show that he told a different story to the police officer. The trial judge told the prosecutor that he had to lay a proper foundation. The jury returned, and the prosecutor asked: "Now, did you ever have occasion while you were incarcerated in the county jail to talk with the police officer and give him a contrary statement?" Defense counsel objected, and the jury was excused. The prosecutor, relying upon *Harris v New York,* 401 US 222; 91 S Ct 643; 28 L Ed 2d 1 (1971), argued that this prior inconsistent statement was admissible to impeach defendant's credibility. The trial judge stated that

plea bargaining was a crucial phase of the criminal proceedings, and that an attorney had to be present. The judge told the prosecutor that if the prosecutor wanted to introduce the statement made by defendant to Detective Day, the evidence would still be inadmissible. The trial court asked the prosecutor to present some authority which might support his contention that such evidence would be admissible. The prosecutor replied that he had a "thousand miles of cases on that particular point", and court was recessed for the day. The prosecutor's first statement on the next day of trial was that he wished to withdraw his motion to introduce defendant's statement to Detective Day. The prosecutor offered no authority to support his contention that the evidence at issue was admissible.

The trial court then told the prosecutor that he had the right to ask defendant whether or not he made a contrary statement, and that defendant would be allowed to answer yes or no. The trial judge told the prosecutor that if defendant answered yes, the prosecutor "could have gone into it". However, if defendant replied "No", the court said: "[t]hat's the end of it. You go on to something else. Then it would seem to me that you would put your witness in the form of rebuttal." He then told the prosecutor that he could ask defendant the question. The jury was returned to the courtroom, the question at issue was read back to defendant by the reporter, defense counsel objected and the jury was excused. The prosecutor then stated that he was offering the proof that defendant had made a contrary statement previous to taking a lie-detector test on April 18, 1973. The judge excluded such evidence but said that because defendant had taken the witness stand, his credibility was at

stake and that the prosecutor had a right to have defendant answer yes or no as to whether he made a previous statement. The jury was returned and defendant said that he did not make a previous contrary statement. The matter was not pursued further, and a special record made at a later time led the court to exclude any reference to the statement made at or about the time defendant took the polygraph exam. However, the prosecutor did ask defendant whether he had told the officer in charge of the polygraph exam anything different than what he had told the jury, and defendant replied "not to my knowledge". The prosecutor then attempted to bring in that officer on rebuttal, a special record was made and the trial court excluded this testimony. The prosecutor rested his case, not having been able to have either of defendant's two previous statements admitted into evidence.

It is well established that defendant's voluntary statements are not precluded from admission into evidence. *People v Moore,* 51 Mich App 48, 51; 214 NW2d 548 (1974). *Harris, supra,* held that an otherwise voluntary statement, although taken in violation of one's *Miranda* rights, could be introduced to impeach defendant's credibility. 401 US 222, 225–226; 91 S Ct 643, 645–646; 28 L Ed 2d 1, 4–5. The record discloses no improper police conduct, and belies the conclusion that defendant's statement was untrustworthy.[1] There is no contention that defendant's statement was involuntary, and the prosecutor may utilize voluntary inconsistent statements to impeach a defendant once a proper foundation for that impeachment has been

---

[1] *See People v Reed,* 393 Mich 342; 224 NW2d 867 (1975), for a discussion of *Harris, supra,* and the use of trustworthy and voluntary statements as opposed to the proscription against using involuntary statements to impeach one's credibility.

laid. See *People v Dozier*, 22 Mich App 528, 531–532; 177 NW2d 694 (1970), *lv den*, 383 Mich 826 (1970), for the proper way in which to lay the foundation previous to impeaching one's credibility with a prior inconsistent statement. Defendant's reliance upon *People v Allen*, 299 Mich 242; 300 NW 59 (1941), is misplaced in that *Allen* did not involve an attempt to impeach one's credibility with a prior inconsistent statement, but rather involved an attempt by the prosecuting attorney to introduce evidence of a subsequent offense after the trial court had ruled that such evidence would be excluded. 299 Mich 242, 244–246, 250. We further note that here the trial court excluded the statement at issue from the prosecutor's case in chief on the grounds that its admission would force defendant to testify. However, once defendant testified, his credibility was at issue, and the fact that a previous inconsistent statement had been made became relevant to his credibility. There was no problem of forcing defendant to testify at that point, and trial court's previous exclusion of the evidence was irrelevant to this stage of the proceedings.

A further problem with the evidence at issue was that it related to defendant's offer to plead guilty. As a general rule, offers by an accused person to plead guilty are inadmissible on the grounds that plea bargaining is to be encouraged for the purpose of achieving the effective administration of criminal justice and that admissibility of the statement would discourage the practice. *McCormick*, Evidence (2nd Ed), § 274, p 665, and cases cited therein. On the other hand, Michigan apparently allows the admission of an accused's offer to settle his case. Although it is established that evidence of a previously withdrawn plea may not

be introduced nor commented upon by the prosecutor, *People v Street,* 288 Mich 406, 407–408; 284 NW 926 (1939), the Michigan Supreme Court has found no impropriety in introducing defendant's negotiations with a sheriff regarding settlement of the charge. *People v MacCullough,* 281 Mich 15, 29; 274 NW 693 (1937).[2] *People v Lombardo,* 301 Mich 451, 455; 3 NW2d 839 (1942), held that defendant's request to the arresting officer to "give her a break", was properly admissible, and an offer to plead guilty to a lesser offense was found to be similar to defendant's actions in hiding in an attic when officers came to arrest him, and was held to be a voluntary act on defendant's part and admissible into evidence. *People v Mulvaney,* 171 Mich 272, 276; 137 NW 155 (1912). Apparently, Michigan construes hiding in an attic and an offer to plead guilty to a lesser offense as perhaps "circumstantial evidence of [defendant's] consciousness of guilt * * * ". See *McCormick,* Evidence (2d Ed), § 271, p 655. While this comparison was not made in *McCormick* and apparently fails to comport with the general rule, we find that error was not committed in this case. In light of *Harris, supra,* and Michigan case law, it appears that the prosecutor was entitled to offer evidence of defendant's prior statement itself to impeach defendant's credibility. However, the instant case never reached this point. The statement itself was never heard by the jury, which heard only the foundation question of whether defendant had made a prior inconsistent statement, to which question the defendant responded "no". Accordingly, we find no error in allowing into evidence the foundation question.

Affirmed.

---

[2] *See contra, People v Morris,* Docket No. 14273, released December 4, 1974 (unpublished per curiam).

N. J. KAUFMAN, J., concurred

O'HARA, J. *(concurring in result)*. My approach to this case is somewhat different from that of Judge ALLEN.

There was direct unequivocal testimony by the manager of the motel that defendant demanded from him money at gunpoint. After getting the money and while attempting to flee the scene the manager shot him. He fell to the floor. A police officer recovered a bundle of currency at his feet. Because of insufficient chain-of-custody testimony the money was not identified as that taken in the robbery. It was a thoroughly permissible inference by the jury that the currency found was that so taken.

The defendant testified to a completely different version of the event. He claimed he was refused room rental when he asked for it, and was shot as he left the place. He admitted he had a "starter pistol" on his person at the time and place in question.

Which one the jury chose to believe was their sole prerogative. They chose to believe the manager. That issue ends there.

The other issues Judge ALLEN discusses may well have been procedural errors. To me they do not individually or collectively rise to constitutional or reversible level. Proof of defendant's guilt beyond any reasonable doubt was adduced.

There is a statute in this state which reads as follows:

"No judgment or verdict shall be set aside or reversed or a new trial be granted by any court of this state in any criminal case, on the ground of *misdirection of the jury,* or the *improper admission or rejection of evidence,* or for error as to any matter of pleading or *procedure,*

unless in the opinion of the court, after an examination of the entire cause, it shall affirmatively appear that the error complained of has resulted in a miscarriage of justice." (Emphasis supplied.) MCLA 769.26; MSA 28.1096.

I presume it means what it says. I have, as the statute demands, made an "examination of the entire cause". I have no reservation in saying that the errors complained of did not result in a miscarriage of justice.

I too vote to affirm.