PEOPLE v OLIVER

Docket No. 50525. Submitted June 26, 1981, at Detroit.—Decided
    December 15, 1981.

    Billie R. Oliver was convicted of first-degree murder in Wayne
        Circuit Court, John H. Hausner, J. The defendant was charged
        with one count of premeditated murder and two counts of
        felony murder. The jury found the defendant guilty on all three
        counts. Judge Hausner dismissed the two counts of felony
        murder and sentenced the defendant on the other count. The
        defendant appeals alleging that: (1) the use of evidence of his
        statement to provide evidence of premeditation violates the
        corpus delicti rule, (2) the trial judge erred when instructing
        the jury on felony murder in the course of a larceny, (3) the
        trial court erred in denying his pretrial and trial motions to
        dismiss the felony murder charge based on murder taking place
        during the perpetration or attempted perpetration of a rape for
        lack of evidence, (4) his right to due process and a fair trial

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 40 Am Jur 2d, Homicide §§ 72, 284, 285.
[2] 40 Am Jur 2d, Homicide § 337.
[3] 73 Am Jur 2d, Statutes §§ 145, 194.
[4] 40 Am Jur 2d, Homicide § 72.
    50 Am Jur 2d, Larceny § 44.
[5] [No reference]
[6] [No reference]
[7] 5 Am Jur 2d, Arrest § 44 et seq.
[8] 21 Am Jur 2d, Criminal Law § 437.
[9] 29 Am Jur 2d, Evidence § 613.
[10] 29 Am Jur 2d, Evidence §§ 529, 543.
[11] 5 Am Jur 2d, Appeal and Error § 798.
[12] 81 Am Jur 2d, Witnesses § 587.
[13] 30 Am Jur 2d, Evidence § 1091.
    40 Am Jur 2d, Homicide § 43.
[14] 29 Am Jur 2d, Evidence § 500.
[15] 29 Am Jur 2d, Evidence § 708.
[16] 29 Am Jur 2d, Evidence § 528.
[17] 29 Am Jur 2d, Evidence § 527.
[18] 21 Am Jur 2d, Criminal Law § 481.
[19] 5 Am Jur 2d, Appeal and Error § 798 et seq.

were denied because the police erased tape recordings of some interrogation sessions following his arrest, (5) evidence of statements he made to the police was the fruit of an illegal arrest because the police entered his house without an arrest warrant and lacked probable cause to arrest him even if their entry into the house was proper, (6) evidence of his statements to the police should have been suppressed because a delay in his arraignment, the type of facility in which he was kept, and the tactics employed by the police acted to coerce his statement, (7) there were insufficient facts in the affidavit to support a finding of probable cause for the issuance of a search warrant of his house, (8) the prosecutor's questioning of a defense witness regarding his arrest for failure to appear when subpoenaed requires reversal, (9) evidence of blood type was erroneously introduced, (10) the trial court erred in excluding evidence of a statement made by the victim's four-year-old child, and (11) the trial court erred in admitting evidence of the defendant's attempts to plea bargain. *Held:*

1. The corpus delicti of felony murder may not be established without evidence independent of the accused's confession. The facts in the defendant's statement did not amount to a confession of guilt. The statement was therefore an admission and outside the corpus delicti rule.

2. The trial judge did not err in failing to instruct the jury on felonious larceny because the value of the property taken is irrelevant to a felony-murder charge based on a murder committed in the perpetration of a larceny.

3. The trial court properly denied the defendant's motion for directed verdict on the murder perpetrated during a rape charge because there was a sufficiently compelling set of circumstances so as to enable a rational trier of fact to find beyond a reasonable doubt that an attempted rape had taken place.

4. No error occurred as a result of the erasure of the tape recordings of some interrogation sessions. No erasure occurred after a defense request for the material nor was the suppression made in bad faith. The evidence had only limited materiality, and its loss cannot be said to have resulted in prejudice to the defendant.

5. The statements made by the defendant should not be considered the fruit of an illegal arrest because the defendant's arrest was not illegal.

6. The trial court did not err in not suppressing evidence of the defendant's statements to the police. The delay in arraigning the defendant was the product of the unavailability of a

prosecuting attorney and a judge and the need of the police to prepare the necessary papers, not to extract a confession from the defendant. In light of the apparent fact that the critical interview was requested by the defendant, it cannot be said that the lower court's decision that the defendant's statement was not coerced was clearly erroneous.

7. There were sufficient facts in the affidavit to support a finding of probable cause for the issuance of a search warrant of the defendant's house. There was no evidence to suggest that any of the information contained in the affidavit was a deliberate falsehood or that it was made in reckless disregard of the truth.

8. A witness may properly be questioned concerning prior arrests not yet resulting in conviction for the purpose of bringing out the witness's bias. Here the questioning sought to demonstrate the witness's hostility toward the prosecution.

9. The defendant's argument that evidence of blood type was erroneously introduced is without merit because the weight of such evidence should be for the jury's determination.

10. The trial court did not err in ruling that evidence of the child's statement was inadmissible because the circumstances indicate that the statement was not particularly reliable even though it was alleged to qualify as an excited utterance exception to the hearsay rule.

11. The trial court erred in admitting evidence of the defendant's attempts to plea bargain, and, because of the nature of the error, it was compounded by the prosecutor's use of the evidence.

Reversed and remanded for a new trial.

1. Homicide — Felony Murder — Corpus Delicti.

The corpus delicti of felony murder must be established by evidence of the essential element that distinguishes the offense of first-degree murder from second-degree murder, independent of the accused's confession.

2. Homicide — Felony Murder — Admissions Not Confessions — Corpus Delicti.

Evidence of an admission by an accused in a felony-murder case not amounting to a confession may be used to establish the corpus delicti of first-degree murder.

3. Statutes — Judicial Construction.

The cardinal rule of statutory construction is to arrive at and effectuate the intent of the Legislature; nonetheless, a statute

must admit of some ambiguity before a court will examine the legislative intent behind it in an attempt to ascertain meaning.

4. LARCENY — VALUE OF PROPERTY — STATUTES.

The difference between felony and misdemeanor larceny often depends on the value of the property that is stolen; however, where the perpetration of a larceny or an attempted larceny provides the circumstance underlying a charge of felony murder, the value of the property involved is irrelevant (MCL 750.316, 750.356; MSA 28.548, 28.588).

5. EVIDENCE — SUPPRESSION OF EVIDENCE — APPEAL.

Absent intentional suppression or a showing of bad faith, the loss of evidence which occurs before a defense request for it does not mandate reversal; it is only where it is found on appeal that initially no effort was made to preserve the evidence or that certain test results actually may have been suppressed, that reversal may be mandated.

6. CRIMINAL LAW — POLICE OFFICERS — TAPE-RECORDED STATEMENTS.

Police officers who are under no duty to tape-record conversations with an accused need not preserve tape recordings of conversations with the accused actually made where there is no request by the accused to preserve the tapes, the evidence contained in the recordings is of limited materiality, no bad faith on the part of the police officers in failing to preserve the tapes is shown, and such failure to preserve the conversations does not result in prejudice to the accused.

7. APPEAL — ARREST — PROBABLE CAUSE.

A reviewing court, in considering a claim that a police officer lacked probable cause to arrest, should determine whether facts available to the officer at the moment of arrest would justify a fair-minded person of average intelligence in believing that the suspected person had committed a felony.

8. ARREST — ARRAIGNMENT — STATUTES.

A person arrested for a felony must be arraigned before a magistrate without unnecessary delay, but arraignment immediately after arrest is not required (MCL 764.13, 764.26; MSA 28.871[1], 28.885).

9. EVIDENCE — PREARRAIGNMENT STATEMENTS.

Evidence of incriminating statements made during a prearraignment detention should not be excluded during trial unless the delay was used as a tool to extract a confession.

10. Criminal Law — Confessions — Voluntariness.

The voluntariness of a confession is to be viewed from the totality of the circumstances surrounding its elicitation; the statement must be a free and rational choice to satisfy due process standards.

11. Appeal — Confessions — Voluntariness.

A lower court's determination of the voluntariness of a defendant's confession is to be reviewed by a standard of whether the lower court's determination was clearly erroneous.

12. Witnesses — Criminal Law — Prior Arrests.

A witness in a criminal case may be questioned concerning his prior arrest not yet resulting in conviction where such questioning is for the purpose of establishing the witness's bias.

13. Evidence — Blood Deposits.

Deposits of blood and other identifiable bodily substances do not differ from other pieces of physical evidence or other observations that show possible connections between a defendant and criminal acts and may be properly admitted, the weight of the evidence being left for the jury's determination.

14. Evidence — Hearsay — Rules of Evidence.

The hearsay rule requires the exclusion of evidence of an out-of-court statement offered to prove the truth of the matter asserted (MRE 801, 802).

15. Evidence — Hearsay — Rules of Evidence.

The hearsay rule does not require the exclusion of evidence of excited utterances or statements relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition (MRE 803.2).

16. Evidence — Guilty Pleas.

Evidence of a vacated guilty plea is inadmissible at a subsequent trial regardless of whether the vacated plea is introduced as substantive evidence of the defendant's guilt or for the purpose of impeaching the defendant following testimony.

17. Evidence — Offers to Plead Guilty.

Evidence of a defendant's offer to plead guilty is inadmissible at trial because admissibility would discourage plea bargaining which helps achieve the effective administration of justice.

18. Criminal Law — Plea Bargains.

The question of whether a particular discussion between the

defendant and the prosecution will be considered as a plea negotiation depends on the totality of the circumstances, and a trial court, when ruling on such question, should apply a two-tiered analysis to determine, first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion and, second, whether the accused's expectation was reasonable given the totality of the objective circumstances.

19. APPEAL — ADMISSION OF EVIDENCE — ERROR.

A determination by the Court of Appeals that a trial court's admission of evidence constitutes error requires a further inquiry to determine whether the error was so offensive to the maintenance of a sound judicial system as to require reversal, and, if not, whether the error was harmless beyond a reasonable doubt.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy A. Baughman,* Assistant Prosecuting Attorney, for the people.

*Peter Jon Van Hoek,* Assistant State Appellate Defender, for defendant on appeal.

Before: J. H. GILLIS, P.J., and BASHARA and K. N. SANBORN,* JJ.

J. H. GILLIS, P.J. Defendant was charged with three counts of first-degree murder for the February 15, 1979, stabbing of Joan Prather in Hamtramck. MCL 750.316; MSA 28.548. Count I charged defendant with premeditated murder while counts II and III charged defendant respectively with committing the murder while in the perpetration or attempted perpetration of a larceny and while in the perpetration or attempted perpetration of a rape. On December 19, 1979,

_____
* Circuit judge, sitting on the Court of Appeals by assignment.

defendant was found guilty on all three counts by a Wayne County Circuit Court jury. The trial judge sentenced the defendant to life imprisonment for the conviction under count I and dismissed counts II and III. Defendant brings this appeal by right.

At the close of the prosecution's proofs, defendant moved for a directed verdict as to count I, claiming premeditation had not been established. The trial court denied the motion stating that premeditation was indicated by defendant's conduct in going home for the knife. This information was supplied by defendant's own statement to the police. Defendant claims that use of the defendant's statement to provide evidence of premeditation violates the corpus delicti rule.

The corpus delicti of felony murder may not be established without evidence, independent of the accused's confession, of the essential element that distinguishes the offense of first-degree murder from second-degree murder. *People v Allen,* 390 Mich 383, 385; 212 NW2d 21 (1973). In *Allen,* the Supreme Court adopted the reasoning of now Justice LEVIN in his dissenting opinion in this Court. 39 Mich App 483, 494-506; 197 NW2d 874 (1972). The reasoning of that opinion would not limit the holding to felony-murder cases, but would apply it to all first-degree murder prosecutions. 39 Mich App 483, 502-506. See also *People v Sparks,* 393 Mich 135; 224 NW2d 481 (1974).

However, in Michigan, the corpus delicti rule is limited to confessions. *People v Porter,* 269 Mich 284; 257 NW 705 (1934).

"* * * The cases do not purport to render inadmissible statements of fact by the accused which do not amount to a confession of guilt of the offense.

"Defendant does not distinguish between confessions

and admissions of fact. If the fact admitted necessarily amounts to a confession of guilt, it is a confession. If, however, the fact admitted does not of itself show guilt but needs proof of other facts, which are not admitted by the accused, in order to show guilt, it is not a confession but an admission and, therefore, is not within the range of cases cited.

\* \* \*

"Here, defendant's exclamation and statements were not part of a confession nor did they, of themselves, amount to a confession of guilt. They were merely admissions, which needed other facts to give them convicting force, and, therefore, were admissible on the *corpus delicti.*" 269 Mich 284, 290-291.

The statement in question here reads:

"I remember leaving the Stephens' house in the project; got a butcher knife. I then blacked out. I blacked out 'til after midnight when I received a phone call at home. I do not remember where I went with the knife. In the morning I woke up, went into the attic. I saw Joan's stereo. I then took the speaker and hid it in the attic. I do not know if I did or did not kill Joan Prather."

The facts admitted did not amount to a confession of guilt; they did not of themselves show guilt, but needed proof of other facts, not admitted, to show guilt. The statement was therefore an admission and outside the corpus delicti rule. *Porter, supra.*

Although *Porter* appears to enunciate a minority rule,[1] it is still the law in Michigan. The case has never been overruled or otherwise disavowed by the Supreme Court. Moreover, in recent years it has repeatedly been followed by this Court. *People v Drielick,* 56 Mich App 664, 667-668; 224

[1] Perkins, *The Corpus Delicti of Murder,* 48 Va L Rev 173, 179-180 (1962); *cf.* Scott, Criminal Law (1972), § 4, p 17; Torcia, Wharton's Criminal Law (14th ed), § 28, pp 145-146, 151.

NW2d 712 (1974), *lv den* 396 Mich 813 (1976), *People v Allen,* 91 Mich App 63, 66; 282 NW2d 836 (1979), *People v Johnson,* 93 Mich App 667, 673; 287 NW2d 311 (1979), *People v Losey,* 98 Mich App 189, 196-197; 296 NW2d 601 (1980). The use of defendant's statement to establish premeditation was not error.

In light of this determination we decline to address defendant's argument concerning the dismissal of counts II and III. A decision on that issue would be necessary only if defendant's conviction on count I was found to be infirm.

Defendant next claims that the trial judge erred when instructing the jury on count II, felony murder in the perpetration of a larceny. It is defendant's position that the trial court should have instructed that a felonious larceny had to be involved and that a misdemeanor larceny is insufficient. The issue was preserved for appeal by defense counsel's requests for a pretrial ruling, and later, for dismissal based on this point.

The statute defining first-degree murder reads:

"All murder which shall be perpetrated by means of poison, or lying in wait, or any other kind of wilful, deliberate and premeditated killing, or which shall be committed in the perpetration, or attempt to perpetrate any arson, rape, robbery, burglary, *larceny of any kind,* extortion or kidnapping, shall be murder of the first degree, and shall be punished by solitary confinement at hard labor in the state prison for life." MCL 750.316; MSA 28.548. (Emphasis supplied.)

The statute describes circumstances that elevate what is otherwise murder (requiring proof of malice) to first-degree murder. *People v Aaron,* 409 Mich 672; 299 NW2d 304 (1980). First-degree murder includes murder "committed in the perpetra-

tion, or attempt to perpetrate * * * larceny of any kind * * *". The cardinal rule of statutory construction is to arrive at and effectuate the intent of the Legislature. Nonetheless, a statute must admit of some ambiguity before a court will examine the legislative intent behind it in an attempt to ascertain meaning. *People v Moore,* 96 Mich App 754, 760-761; 293 NW2d 700 (1980). Here, the language is unambiguous and the legislative intent should be determined accordingly. The phrase "larceny of any kind" means just that. The difference between felony and misdemeanor larceny will often depend on the value of the property stolen. MCL 750.356; MSA 28.588. A larceny or attempted larceny is no less of an aggravating circumstance in the context of a murder charge if the killing is for 35 cents as opposed to $100 or $5,000. The trial judge did not err in failing to instruct the jury on felonious larceny.

Count III of the information originally charged defendant with first-degree felony murder, alleging the murder took place during the perpetration or attempted perpetration of a rape.[2] The trial court denied defendant's pretrial and trial motions to dismiss count III based on lack of evidence. We review that ruling with the *Hampton*[3] standard in mind.

---

[2] This charge was proper even though the "rape" statute has been repealed and replaced by the criminal sexual conduct statutory scheme. See *People v McDonald,* 409 Mich 110; 293 NW2d 588 (1980).

[3] "In summary, the trial judge when ruling on a motion for a directed verdict of acquittal must consider the evidence presented by the prosecution up to the time the motion is made, *Garcia, supra [People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976)], view that evidence in a light most favorable to to prosecution, *People v Vail,* 393 Mich 460, 463; 227 NW2d 535 (1975), and determine whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt, *Jackson, supra [Jackson v Virginia,* 443 US 307; 99 S Ct 2781; 61 L Ed 2d 560 (1979)], p 319." *People v Hampton,* 407 Mich 354, 368; 285 NW2d 284 (1979).

Samples from the decedent's vagina failed to reveal the presence of sperm. However, when decedent was found, her nightgown was pulled up over her waist and a knife was left in her vagina. Further, decedent's panties were found in a ripped or cut condition. Her sweater was on a couch in the living room, but buttons apparently torn off of it were found under a kitchen table. The condition of the articles of clothing points to a struggle in the course of an attempted rape. The sweater and panties were apparently torn off the decedent and the nightgown pulled up. While just one of these circumstances might leave one with a reasonable doubt as to the existence of an attempted rape, their combination creates a sufficiently compelling set of circumstances so that a rational trier of fact could find beyond a reasonable doubt that an attempted rape had taken place. The trial court properly denied defendant's motion for directed verdict on count III.

Prior to trial defendant moved to suppress all evidence of various interrogation sessions conducted after defendant's arrest. Defendant claims his right to due process and a fair trial were denied because the police erased tape recordings of some of those interrogation sessions. The tapes in question were erased prior to any defense request. In *People v Amison,* 70 Mich App 70; 245 NW2d 405 (1976), this Court stated:

"This Court has uniformly held that, absent intentional suppression or a showing of bad faith, the loss of evidence which occurs before a defense request for it does not mandate reversal. *People v Eddington, supra* [53 Mich App 200; 218 NW2d 831 (1974)], *People v Bendix,* 58 Mich App 276; 227 NW2d 316 (1975), *People v McCartney,* 60 Mich App 620; 231 NW2d 472 (1975). This Court has also held that the intentional destruc-

tion of tape recordings, where the purpose is not to destroy evidence for a forthcoming trial, does not mandate reversal. *People v Hardaway,* 67 Mich App 82; 240 NW2d 276 (1976). It is only where this Court has found that there was no effort made to preserve the evidence initially, *People v Anderson,* 42 Mich App 10; 201 NW2d 299 (1972), *remanded on other grounds* 391 Mich 419; 216 NW2d 780 (1974), or where there was the possibility that certain test results may have been actually suppressed, *People v Drake, supra* [64 Mich App 671; 236 NW2d 537 (1975)] that this Court has found possible suppression mandating reversal. In *Anderson* and *Drake,* hearings were required to determine the quality of plaintiff's conduct and the nature of the lost evidence." 70 Mich App 70, 79-80.

Thus, although bad faith is irrelevant when "suppression" occurs after a defense request, it is a pertinent factor where suppression precedes a request. *Amison* was followed in *People v Albert,* 89 Mich App 350; 280 NW2d 523 (1979), where bad faith was found to exist. There, however, the police officer frankly admitted that he destroyed a tape of a prosecution witness because it "wasn't anything that [he] wanted to hear", even though he was aware that it was probably important to the defense. 89 Mich App 350, 353-354. The witness's statement did not implicate the defendant, while his subsequent statements and trial testimony did.

The present case is distinguishable. Officer Milewski testified at the pretrial hearing regarding the erasure. He indicated that the tapes were erased not because they would be helpful to the defense but because the police had other people to tape and only a limited number of tapes. Officer Milewski felt that defendant had said nothing of importance at the earlier sessions. He denied knowing that the tapes would be important to the defense case. Bad faith is not evident.

*Albert* also is distinguishable in that it involved a tape of a third party who subsequently changed his story. Here, although his statements differed, the taped party was the defendant. The earlier tapes, although exculpatory in nature, were unlikely to have been valuable for cross-examination like the tape destroyed in *Albert.*

For the same reason, defendant's argument that the police had a duty to preserve the tapes is rejected. The police were under no initial duty to tape or otherwise record their conversations with the defendant. The erasure of the tape hardly denied defendant access to those conversations, since he was a party to them. Thus, *People v Anderson,* 42 Mich App 10; 201 NW2d 299 (1972), is not applicable. There, the prosecution failed to preserve photographs used in a showup. The lack of the photographs inhibited the defense counsel's ability to cross-examine the identifying witnesses. 42 Mich App 10, 16. Likewise, *United States v Bryant,* 142 US App DC 132; 439 F2d 642 (1971), which imposes a duty of preservation is also distinguishable. In *Bryant,* the evidence destroyed was a tape of the actual drug transaction for which the defendant was being prosecuted. The tape was direct evidence, perhaps the best evidence, of whether the defendant was actually culpable of the offense. The tape recording erased here was not directly material. Further, the substance of defendant's early denials was communicated to the jury. Therefore, to the extent that evidence of those denials was favorable, defendant was not prejudiced.

We conclude that no error took place. There was no suppression after a defense request for the material, nor was the suppression that did take place made in bad faith. The evidence had only

limited materiality and its loss cannot be said to have resulted in prejudice to the defendant.

Defendant next argues that the statements were the fruit of an illegal arrest, on grounds that the police entered his house without an arrest warrant and lacked probable cause to arrest defendant even if their entry into the house was proper. Defendant cites *Payton v New York,* 445 US 573; 100 S Ct 1371; 63 L Ed 2d 639 (1980), in support.

In *Payton,* the Supreme Court held that the Fourth Amendment prohibits the police from making a warrantless nonconsensual entry into a suspect's home to make a routine felony arrest. The case has no application to the present situation. The police here entered defendant's home pursuant to a search warrant. When he was found on the premises he was arrested. Assuming that there was probable cause to arrest defendant, the effect of defendant's interpretation of *Payton* would be to permit the police to make such an arrest in public, but forbid such an arrest within a suspect's home even when the police are otherwise properly upon the premises. This result is absurd, since it ignores the fact that *Payton* was based on the Fourth Amendment's prohibition on warrantless *entries.*

Turning to defendant's argument that the police lacked probable cause to arrest him, we first note the standard of review of such claims:

"Therefore, in reviewing a claim that a police officer lacked probable cause to arrest, the reviewing court must determine whether facts available to the officer at the moment of arrest would justify a fair-minded person of average intelligence in believing that the suspected person had committed a felony. Each case must be analyzed in light of the particular facts confronting the arresting officer. *People v Harper,* 365 Mich 494; 113

NW2d 808 (1962)." *People v Summers,* 407 Mich 432, 442; 286 NW2d 226 (1979).

The facts available to the police pointed to defendant as the perpetrator of the offense. They had been informed that defendant was acquainted with the decedent and that he stopped by frequently, but mainly when decedent's fiancé was absent. Defendant had been in a fight with the fiancé and the decedent a year before. Defendant was seen in the area prior to the offense. After the offense, he was seen dressed differently, without a shirt or socks, and with his hair messed up and no longer in a ponytail. Defendant had previously stated he was going to get his car, but was seen shortly afterwards without it. Defendant had been known to express a desire for sexual relations with the decedent. The decedent's nephew thought that footprints in the snow were those of defendant; he was apparently familiar with defendant's "brogan" shoes. The nephew also believed that decedent would have allowed defendant into her home. There was no evidence of a forced entry at the murder scene. At the time, the police believed defendant to have been involved in other stabbings.

The police had been told that defendant was afraid of the fact that decedent had started to work for the police, since he had bragged to her and others of other stabbings and rapes. The knife utilized was bent in a manner similar to that of one used in another stabbing for which defendant was a suspect. Footprints from the murder scene pointed in the direction of defendant's home, some three-tenths of a mile away. The sum total of this information would justify a fair-minded person of average intelligence in believing that defendant might have committed the crime. We conclude

that probable cause existed for the defendant's arrest.

Defendant next claims that evidence of his statements to the police should have been suppressed because a delay in his arraignment, the type of facility in which he was kept, and the tactics employed by the police acted to coerce his statement. After an extended hearing the trial judge concluded that the statements taken were voluntary, not the product of the delayed arraignment, and admissible.

Pursuant to statute, a person arrested for a felony is to be arraigned before a magistrate without unnecessary delay. MCL 764.13, 764.26; MSA 28.871(1), 28.885. The statutes, however, do not require immediate arraignment. Evidence of incriminating statements made during a prearraignment detention should not be excluded unless the delay was used as a tool to extract a confession. *People v White,* 392 Mich 404, 424; 221 NW2d 357 (1974), *cert den* 420 US 912 (1975), *People v Ewing (On Remand),* 102 Mich App 81, 85; 300 NW2d 742 (1980).

In the present case, there was a delay of about a day and a half between defendant's arrest and arraignment. The statement in question was made at 1:30 p.m., Saturday, February 17, 1979, approximately 19 hours after defendant's arrest. Officer Milewski attributed the delay to several reasons. The judge normally handling the arraignments was not available. The police spent most of that Saturday interviewing and tape-recording witnesses' statements. By the time they finished and felt prepared to seek a warrant for defendant's arraignment there was no prosecutor available to issue the request for a warrant. The officers decided to proceed with arraigment the following

morning. Apparently some of them had been awake and working since the time of the murder. Moreover, Officer Milewski stated that by Saturday morning they were not even interested in interviewing defendant again, but that defendant requested to talk to them. However, when Officer John Guarascio was asked if the arraignment was delayed "because you were still investigating the case and interrogating Mr. Oliver", he conceded that was part of it, but also that there was no judge available. The trial court apparently gave less weight to Guarascio's statement than to the testimony of Officer Milewski, who was the officer in charge of the case. Looking at the testimony as a whole, we conclude that the delay was the product of the unavailability of a prosecutor and judge and the need of the police to prepare the necessary papers. It is not evident that the delay was used as a tool to extract a confession from defendant. *People v White, supra.*

Defendant testified as to the conditions of his incarceration and the methods of coercion used by the police to obtain his statement. It is evident that, after listening to the available tape recordings, the trial court decided that defendant's claims of coercion were simply not credible and that the officer's version of the delay, interrogation and surrounding circumstances was more consistent with what could be gathered from the recordings.

The voluntariness of a confession is to be viewed from the totality of the circumstances surrounding its elicitation. *Frazier v Cupp,* 394 US 731; 89 S Ct 1420; 22 L Ed 2d 684 (1969). The statement must be one of a free and rational choice to satisfy due process standards. *Jackson v Denno,* 378 US 368; 84 S Ct 1774; 12 L Ed 2d 908 (1964). Here, the

question of voluntariness largely boiled down to a question of witness credibility. *Walker*[4] hearings are to be reviewed by a standard of whether the lower court's determination was clearly erroneous, particularly where demeanor and credibility are crucial. *People v Terlisner,* 96 Mich App 423; 292 NW2d 223 (1980). Here, the trial court possessed a superior opportunity to judge such credibility. In light of the apparent fact that the critical interview was requested by defendant, it cannot be said that the lower court's decision was clearly erroneous.

We reject defendant's claim that there were insufficient facts in the affidavit to support a finding of probable cause for the issuance of a search warrant of the defendant's house. There was no evidence to suggest that any of the information contained in the affidavit was a deliberate falsehood or made in reckless disregard of the truth. See *Franks v Delaware,* 438 US 154; 98 S Ct 2674; 57 L Ed 2d 667 (1978). Moreover, even without the two items excluded from the affidavit by the trial court, the affidavit contained sufficient information to warrant a person of reasonable caution to believe that a search of the defendant's house would reveal evidence of the offense. The evidence seized was properly held admissible.

We also reject defendant's claim that the prosecutor's questioning of a defense witness regarding his arrest for failure to appear when subpoenaed requires reversal. A witness may be questioned concerning prior arrests not yet resulting in conviction when done for the purpose of bringing out the witness's bias. *People v Hogan,* 105 Mich App 473; 307 NW2d 72 (1981). Here, as in *Hogan,* the

---

[4] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

questioning sought to demonstrate the witness's hostility toward the prosecution.

With regard to defendant's claim that blood-type evidence was erroneously introduced we choose to follow *People v Horton,* 99 Mich App 40; 297 NW2d 857 (1980), in holding the weight of such evidence is for the jury's determination.

The victim's four-year-old son, Aaron, made an out-of-court declaration that his "daddy" killed his mother. Prior to trial and following an in-chambers interview with the child, the trial court ruled that the statement did not qualify as an excited utterance under MRE 803(2). Defendant assigns error.

The hearsay rule requires the exclusion of evidence of an out-of-court statement offered to prove the truth of the matter asserted. MRE 801, 802. The statement here was that of Aaron Prather to the effect that his "daddy" committed the murder. The statement was hearsay since it was made out of court and offered to prove the truth of the matter asserted. However, the hearsay rule does not require the exclusion of excited utterances, that is, statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition". MRE 803(2). Related to this exception is the rule that hearsay statements of children who are victims of sexually related offenses are admissible under some circumstances. See, *e.g., People v Debreczeny,* 74 Mich App 391, 394; 253 NW2d 776 (1977). These two exceptions were applied in *People v Lovett,* 85 Mich App 534, 543-545; 272 NW2d 126 (1978), to justify the introduction of the hearsay statement of a 3-1/2-year-old child made one week after she witnessed the rape and murder of her babysitter. There, the one-week delay was

explained by the fact that the child stayed that week with her grandparents, away from her mother. The Court concluded that there was a strong indicia of reliability. 85 Mich App 534, 545.

There are no indicia of reliability in this case. The trial court's interviews with Aaron Prather revealed that the child did not witness the murder; at best he saw a "boy" running from the front door and around the corner. It did not appear that the child was particularly agitated at the time the statement was allegedly made, as he was just standing around the kitchen table "like any other kid". Moreover, the testimony indicated that the adults were in conversation: "Everybody was just wondering how did it happen, and, like, who did it." Although the witness who would testify to Aaron's statement denied that the adults expressed any opinions on the subject matter, she conceded that she did not know how many people Aaron had talked to before her own arrival. Further, it does not appear that this witness was aware of all the conversation that took place while she was present. When asked of the police questions to another she said, "[o]nly part I heard was that she said they just been back together a week before this took place". That statement would indicate that there was some discussion regarding the relationship between Ms. Prather and her son's father, which might have touched on speculation that the father committed the crime. Aaron Prather might have been privy to such talk unbeknownst to the witness. These circumstances indicate that the statement was not one to be viewed as particularly reliable. The trial court did not err in ruling evidence of the child's statement inadmissible.

We turn to defendant's claim that the trial court

erroneously admitted evidence of defendant's attempts to plea bargain. During direct examination of the officer in charge of investigation of the homicide, the prosecutor elicted the following testimony:

"*Q.* All right. What happened then?

"*A.* I brought him upstairs, readvised him of his rights again. At that interrogation session he mostly asked all the questions.

"*Q.* What did he ask you?

"*A.* He asked me questions like, if I said I did it—he was plea bargaining with me, but—

"*Mr. Mouradian:* Your Honor, objection. May I approach the bench, please."

Defendant's counsel's objection was overruled and his motion for mistrial denied. The prosecutor continued:

"*Q.* * * * Detective Milewski, what do you mean when you say the defendant attempted to plea bargain with you?

"*A.* He made statements like, if I said I did it, would it still be first-degree murder. I told him I could not talk to him about that. I just wanted to know if he did or did not do the crime. I told him that I am incapable of any negotiations of that type. He then made a statement. He says, if he said I did it, do I have to say it in front of a full court? I said, Billy, I don't take—you're talking to the wrong man. I just want to know if you did it. If you did it, fine. If you didn't do it, don't say you did."

During closing argument the prosecutor reminded the jury of this testimony:

"This is when Detective Milewski put it that he attempted to plea bargain and he said those are—quot-

ing Detective Milewski as to what defendant said—'If I say I did it, would it still be murder in the first degree?' The defendant also said at that session Saturday morning, 'If I say I did it, do I have to tell how it happened in open court?' Obviously showing state of mind of the defendant at the time."

He then argued the point during rebuttal:

"Why did the defendant plea bargain and why did he say if I say I did it, would it still be murder in the first degree? Why did he say, if I say I did it, do I have to say it in open court? Why did he say it if he didn't? Keep in mind the testimony of the defendant is uncontradicted regarding all those statements."

MRE 410 provides in part:

"Except as otherwise provided in this rule, evidence of a plea of guilty, later withdrawn, or a plea of nolo contendere, or of an offer to plead guilty or nolo contendere to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, is not admissible in any civil or criminal proceeding against the person who made the plea or offer."

One Michigan case has examined the application of this rule since its effective date, March 3, 1978.[5] However, it has long been the law in Michigan that a vacated guilty plea may not be used at a subsequent trial. See *People v George,* 69 Mich App 403, 407; 245 NW2d 65 (1976), *lv den* 399 Mich 857 (1977), and cases cited therein. With respect to prior law on a defendant's offer to plead guilty, rather than the actual guilty plea, *People v Ford,* 59 Mich App 35; 228 NW2d 533 (1975), addressed the point and stated in dicta that Michi-

---

[5] *People v Bradley,* 106 Mich App 373; 308 NW2d 216 (1981).

gan law is contrary to the rule requiring exclusion of such offers.

The language of MRE 410 rejects the *Ford* dicta. With the adoption of MRE 410, offers to plead guilty became inadmissible. The purpose behind the exclusion of MRE 410 is that plea bargaining is to be encouraged to help achieve the effective administration of criminal justice and admissibility would discourage such bargaining. *People v Ford, supra,* 45, citing McCormick, Evidence (2d ed), § 274, p 665. See also Anno: *Admissibility of Defense Communications Made in Connection With Plea Bargaining,* 59 ALR3d 441. A recent series of cases interpreting the identical federal rule reiterates this purpose. *United States v Robertson,* 582 F2d 1356 (CA 5, 1978), *United States v Geders,* 566 F2d 1227 (CA 5, 1978), *United States v Herman,* 544 F2d 791 (CA 5, 1977). Those cases state that it is "inescapable that for plea bargaining to work effectively and fairly, a defendant must be free to negotiate without fear that his statements will later be used against him". *United States v Robertson, supra,* 1365, *United States v Herman, supra,* 796.

*Robertson, supra,* indicates that the question of whether a particular discussion will be considered as a plea negotiation depends on the totality of the circumstances. However, in light of the purpose of the rule, to promote discussion, inquiry must focus on the accused's perceptions. *Id.,* 1366. The case enunciated a two-tiered analysis:

"The trial court must apply a two-tiered analysis and determine, first, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable given the totality of the objective circumstances. *Cf. Toler v Wyrick,* 563 F2d

372 (CA 8, 1977), *United States ex rel Robinson v Housewright,* 525 F2d 988 (CA 7, 1975), *Calabrese v United States,* 507 F2d 259 (CA 1, 1974), *Ford v United States,* 418 F2d 855 (CA 8, 1969)." 582 F2d 1356, 1366.

Pursuant to this analysis, defendant's statement in the case at bar must be considered a plea negotiation. The essence of the statement is contained in defendant's query, "* * * if I said I did it, would it still be first-degree murder [?]". The nature of defendant's question indicates a subjective expectation to negotiate a plea. Moreover, it does not appear that this expectation was unreasonable. Officer Milewski conceded that he told defendant that he always tries to "help a guy that tells me the truth", and that, generally, he attempts to leave a defendant with the impression that he is a "good guy" who can be talked to openly. It was reasonable for defendant to assume that Officer Milewski could be talked to regarding a plea to reduced charges. It is noteworthy that Officer Milewski characterized the conversation as plea bargaining. Under MRE 410, the testimony should have been excluded.

The question remaining is whether the error was harmless. A two-part test is employed: (1) was the error so offensive to the maintenance of a sound judicial system as to require reversal, and (2) if not, was the error harmless beyond a reasonable doubt, that is, had the trial been free of the error, is it not reasonably possible that any juror would have voted to acquit? *People v Bailey,* 101 Mich App 144, 152; 300 NW2d 474 (1980), *People v Wright (On Remand),* 99 Mich App 801, 810, 811; 298 NW2d 857 (1980).

With regard to the second part of the test, in the context of this trial, we conclude that the improper admission of this evidence was harmless

beyond a reasonable doubt. The other evidence adduced at trial of defendant's guilt was more than substantial.

In applying the first part of the test, we note that the nature or amount of evidence produced against the defendant is irrelevant. *People v Christensen,* 64 Mich App 23, 33; 235 NW2d 50 (1975), *lv den* 397 Mich 839 (1976). Its purpose is in part to deter prosecutorial misconduct. *Id.* An error which is deliberately injected into the proceedings by the prosecutor weighs in favor of requiring reversal. *Id.*

In the case before us, because of the nature of the error, compounded by the nature of the prosecutor's use of it, we are constrained to reverse defendant's conviction and remand this case for a new trial. The purpose of excluding offers to plead guilty is to encourage plea negotiations and dialogue. The failure to exclude signals a breakdown of the rule and acts to deter future negotiations. Further, the evidence was not inadvertently introduced into the trial. The prosecutor deliberately injected the information. MRE 410 is not at all ambiguous on this point, so its application to the situation should have come as no surprise to the prosecution. Nonetheless, the prosecutor went on to argue that defendant's attempt to plea bargain was evidence of his guilt. Thus, the error was not harmless.

We have reviewed the remaining issues raised by defendant and find no other error requiring reversal.

Reversed and remanded for a new trial.